UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY; ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY; ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY; ESURANCE INSURANCE COMPANY; and ESURANCE PROPERTY AND CASUALTY INSURANCE COMPANY, | C.A. No. _____ |
| Plaintiffs, | **Demand for Jury Trial** |
| v. | |
| APPLIED REHAB & PHYSICAL THERAPY LLC d/b/a APPLIED REHAB; ELITE CHIROPRACTIC CENTER, P.C.; CORE HEALTH PLLC.; STRAIGHTWAY TRANSPORTATION LLC; HUSSEIN A. HURAIBI, MD, PLLC d/b/a HURAIBI PAIN & REHAB INSTITUTE; HS MANAGEMENT LLC; KALLIL KAZAN, D.C.; NAIM KHANAFER, D.C.; NAIEL SALAMEH, D.C.; MOHAMAD KAZAN; and HUSSEIN HURAIBI, M.D., | |
| Defendants. | |

## <u>COMPLAINT</u>

Plaintiffs Allstate Insurance Company, Allstate Property and Casualty

Insurance Company, Allstate Fire and Casualty Insurance Company, Esurance

Insurance Company, and Esurance Property and Casualty Insurance Company

1

(hereinafter, "Allstate" and/or "plaintiffs"), by their attorneys SMITH & BRINK, hereby allege as follows.

## I. __INTRODUCTION__

1.     This is a case about medical clinics, physical therapy clinics, chiropractic clinics, a transportation company, and the owners, managers, agents, and representatives of the same who abused the benefits available under the Michigan No-Fault Act, Mich. Comp. Laws § 500.3101, *et seq*. and Allstate policies of insurance, by engaging in a scheme to defraud Allstate by submitting and causing to be submitted false and fraudulent medical records, bills, and invoices through interstate wires and the U.S. Mail seeking payment under the No-Fault Act for treatment and services that were not actually rendered and, if performed at all, were medically unnecessary, unlawful, and were fraudulently billed.

2.     Defendants Applied Rehab & Physical Therapy LLC d/b/a Applied Rehab ("Applied Rehab"); Elite Chiropractic Center, P.C. ("Elite Chiropractic"); Core Health PLLC ("Core Health"); Straightway Transportation LLC ("Straightway"); Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute ("Huraibi Pain & Rehab Institute"); HS Management LLC ("HS Management") (collectively, the "Defendant Entities"); Kallil Kazan, D.C. ("Kallil Kazan"); Naim Khanafer, D.C. ("Khanafer"); Naiel Salameh, D.C. ("Salameh"); Mohamad Kazan ("Mo Kazan"); and Hussein Huraibi, M.D. ("Huraibi")

(collectively, with the Defendant Entities, the "defendants") each conspired to, and did in fact, defraud Allstate by perpetuating an insurance billing fraud scheme in violation of state and federal law.

3.      The purpose of the fraudulent scheme devised and implemented by the defendants was to generate claims to, and collect payments from, Allstate pursuant to Michigan's No-Fault Act for the purported treatment of patients who had allegedly been involved in motor vehicle accidents.

4.      The defendants engaged in a fraudulent scheme to consistently bill Allstate for treatment or services that were not actually provided to patients and manufactured documents to make it appear as though patients received services when, in fact, no such services were rendered.

5.      To achieve their fraudulent objective, the defendants unlawfully and improperly solicited patients to their clinics.

6.      On occasions when the treatment was actually rendered, the defendants transported patients to and from appointments using an unlicensed medical transportation company.

7.      The defendants engaged in the fraudulent billing practice of unbundling.

8.      The defendants also charged excessive amounts that far exceeded reasonable and customary rates in express violation of the No-Fault Act.

9.     Allstate's investigation of claims submitted to it by and on behalf of the defendants revealed treatment that was not tailored to the clinical needs of each patient, but rather was performed (if at all) solely to generate profit for the defendants.

10.    Allstate reasonably relied to its detriment on the bills and medical documentation submitted to it by and on behalf of the defendants.

11.    Each of the defendants named herein conspired with one another to accomplish and to further the objectives of their fraudulent scheme.

12.    All of the acts and omissions of the defendants, described throughout this Complaint, were undertaken intentionally.

13.    The insurance fraud scheme perpetrated by the defendants was designed to, and did in fact, result in the payment of No-Fault benefits from Allstate to and on behalf of the defendants.

14.    In each claim at issue in this Complaint for which Allstate is seeking damages, an Allstate automobile insurance contract applicable in the State of Michigan was the platform upon which the defendants perpetrated their fraudulent scheme.

15.    By this Complaint, and as detailed in each count set out below, Allstate brings this action for: (1) violations of the federal Racketeer Influenced and Corrupt

Organizations (RICO) Act, 18 U.S.C. § 1962(c) and (d); (2) common law fraud; (3) civil conspiracy; (4) payment under mistake of fact; and (5) unjust enrichment.

16.     Allstate's claim for compensatory damages includes: (1) payments made by Allstate to the Defendant Entities in reliance upon the false representations that they were eligible to receive payment under the Michigan No-Fault Act, (2) treble damages, (3) statutory interest, (4) costs, including but not limited to the costs of claims handling and the cost of investigation to uncover the fraudulent scheme perpetrated by the defendants, and (5) attorney's fees.

17.     Allstate also seeks a declaration pursuant to 28 U.S.C. § 2201 that the defendants have no right to receive payment for any previously-denied and pending bills submitted to Allstate whereas (1) the defendants billed Allstate for services that were not rendered; (2) the defendants billed Allstate for services and treatment that were not reasonably necessary; (3) the defendants billed Allstate for unlawful services and treatment that were designed and implemented solely to increase their profits; and (4) the defendants engaged in a pervasive pattern and practice of submitting false medical documentation through interstate wires and the U.S. Mail demanding payment from Allstate.

18.     As a result of their fraudulent acts, Allstate has paid the defendants in excess of $1,334,135 related to the patients at issue in this Complaint.

## II.    PARTIES

### A.    PLAINTIFFS

19.    Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Property and Casualty Insurance Company are each companies duly organized and existing under the laws of the State of Illinois.

20.    Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Property and Casualty Insurance Company each have their respective principal places of business in Northbrook, Illinois.

21.    Esurance Insurance Company and Esurance Property and Casualty Insurance Company are companies duly organized and existing under the laws of the State of Wisconsin.

22.    Esurance Insurance Company and Esurance Property and Casualty Insurance Company each have their principal places of business in San Francisco, California.

23.    At all times relevant to the allegations contained in this Complaint, the plaintiffs were authorized to conduct business in the State of Michigan.

### B.    DEFENDANTS

#### 1.    Applied Rehab & Physical Therapy LLC d/b/a Applied Rehab

24.    Applied Rehab & Physical Therapy LLC d/b/a Applied Rehab is a limited liability company organized under the laws of the State of Michigan.

25.    At all relevant times, Applied Rehab was owned and controlled by Kallil Kazan, Khanafer, and Salameh.

26.    Applied Rehab's principal place of business is located in Dearborn, Michigan.

27.    Applied Rehab illegally solicited patients and billed Allstate for treatment and services that were not rendered, were medically unnecessary (to the extent treatment was rendered at all), and were billed at unreasonable rates in relation to several patients at issue herein, including the patients set out in Exhibit 1.

### 2.    Elite Chiropractic Center, P.C.

28.    Elite Chiropractic Center, P.C. is a professional corporation incorporated under the laws of the State of Michigan.

29.    At all relevant times, Elite Chiropractic was owned and controlled by Salameh.

30.    Elite Chiropractic's principal place of business is located in Dearborn, Michigan.

31.    Elite Chiropractic illegally solicited patients and billed Allstate for treatment and services that were medically unnecessary and were billed at unreasonable rates in relation to several patients at issue herein, including the patients set out in Exhibit 2.

### 3.    Core Health PLLC

32.    Core Health PLLC is a professional limited liability company organized under the laws of the State of Michigan.

33.    At all relevant times, Core Health was owned and controlled by Kallil Kazan and Khanafer.

34.    Core Health's principal place of business is located in Dearborn, Michigan.

35.    Core Health illegally solicited patients and billed Allstate for treatment and services that were not rendered, were unlawful, were medically unnecessary, and were billed at unreasonable rates in relation to several patients at issue herein, including the patients set out in Exhibit 3.

### 4.    Straightway Transportation LLC

36.    Straightway Transportation LLC is a limited liability company organized under the laws of the State of Michigan.

37.    At all relevant times, Straightway was owned and controlled by Mo Kazan.

38.    Straightway's principal place of business is located in Dearborn Heights, Michigan.

39.    Straightway billed Allstate for services that were not rendered, were unlawful and unnecessary, and were billed at unreasonable rates in relation to several patients at issue herein, including the patients set out in Exhibit 4.

### 5.    **Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute**

40.    Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute is a professional limited liability company organized under the laws of the State of Michigan.

41.    At all relevant times, Huraibi Pain & Rehab Institute was owned and controlled by Huraibi.

42.    Huraibi Pain & Rehab Institute's principal place of business is located in Dearborn, Michigan.

43.    Huraibi Pain & Rehab Institute issued medically unnecessary physical therapy prescriptions and disability certificates, and billed Allstate for services that were not rendered, were medically unnecessary, and were billed at unreasonable rates in relation to several patients at issue herein, including the patients set out in Exhibit 5.

### 6.    **HS Management LLC**

44.    HS Management LLC is a limited liability company organized under the laws of the State of Michigan.

45.     At all relevant times, HS Management was owned and controlled by Huraibi.

46.     HS Management's principal place of business is located in Dearborn, Michigan.

47.     HS Management issued medically unnecessary physical therapy prescriptions and disability certificates, and billed Allstate for services that were not rendered, were medically unnecessary, and were billed at unreasonable rates in relation to several patients at issue herein, including the patients set out in Exhibit 6.

### 7.     **Kallil Kazan, D.C.**

48.     Kallil Kazan, D.C. is a resident and citizen of the State of Michigan.

49.     At all relevant times, Kallil Kazan owned and controlled Applied Rehab and Core Health.

50.     At all relevant times, Kallil Kazan participated in the operation and control of Applied Rehab and Core Health as the treating physician identified in the bills submitted to Allstate, including bills relating to patients set out in Exhibits 1 and 3.

51.     As the owner of Applied Rehab and Core Health, Kallil Kazan was responsible for the unlawful, medically unnecessary, and unreasonably charged treatment at issue in this Complaint, including the patients set out in Exhibits 1 and 3.

52.     As discussed herein, Kallil Kazan also participated in the operation of Elite Chiropractic, Straightway, Huraibi Pain & Rehab Institute, and HS Management.

### 8.     Naim Khanafer, D.C.

53.     Naim Khanafer, D.C. is a resident and citizen of the State of Michigan.

54.     At all relevant times, Khanafer owned and controlled Applied Rehab and Core Health.

55.     At all relevant times, Khanafer participated in the operation and control of Applied Rehab and Core Health as the treating physician identified in the bills submitted to Allstate, including bills relating to patients set out in Exhibits 1 and 3.

56.     As the owner of Applied Rehab and Core Health, Khanafer was responsible for the unlawful, medically unnecessary, and unreasonably charged treatment at issue in this Complaint, including the patients set out in Exhibits 1 and 3.

57.     As discussed herein, Khanafer also participated in the operation of Elite Chiropractic, Straightway, Huraibi Pain & Rehab Institute, and HS Management.

### 9.     Naiel Salameh, D.C.

58.     Naiel Salameh, D.C. is a resident and citizen of the State of Michigan.

59.     At all relevant times, Salameh owned and controlled Applied Rehab and Elite Chiropractic.

60.     At all relevant times, Salameh participated in the operation and control of Applied Rehab and Elite Chiropractic as the treating physician identified in the bills submitted to Allstate, including bills relating to patients set out in Exhibits 1 and 2.

61.     As the owner of Applied Rehab and Elite Chiropractic, Salameh was responsible for the unlawful, medically unnecessary, and unreasonably charged treatment at issue in this Complaint, including the patients set out in Exhibits 1 and 2.

62.     As discussed herein, Salameh also participated in the operation of Core Health, Straightway, Huraibi Pain & Rehab Institute, and HS Management.

### 10.     **Mohamad Kazan**

63.     Mohamad Kazan is a resident and citizen of the State of Michigan.

64.     At all relevant times, Mo Kazan owned and controlled Straightway.

65.     As the owner and manager of Straightway, Mo Kazan submitted bills to Allstate for services that were not rendered and, to the extent any services were actually rendered, were unlawful and were billed at unreasonable rates in relation to several patients at issue herein, including the patients set out in Exhibit 4.

66.     As discussed herein, Mo Kazan also participated in the operation of Applied Rehab, Elite Chiropractic, Core Health, Huraibi Pain & Rehab Institute, and HS Management.

### 11. **Hussein Huraibi, M.D.**

67.     Hussein Huraibi, M.D. is a resident and citizen of the State of Michigan.

68.     At all relevant times, Huraibi owned and controlled Huraibi Pain & Rehab Institute and HS Management.

69.     As owner of Huraibi Pain & Rehab Institute and HS Management, Huraibi was responsible for the unlawful, medically unnecessary, and unreasonably charged services at issue in this Complaint, including the patients set out in Exhibits 5 and 6.

70.     At all relevant times, Huraibi participated in the operation and control of Huraibi Pain & Rehab Institute and HS Management as the treating physician identified in the bills submitted to Allstate, including bills relating to patients set out in Exhibits 5 and 6.

71.     As discussed herein, Huraibi also participated in the operation of Applied Rehab, Elite Chiropractic, Core Health, and Straightway.

## III.  **JURISDICTION AND VENUE**

72.     Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over this action relating to the claims brought by the plaintiffs under 18 U.S.C. § 1961 *et seq*. because they arise under the laws of the United States.

73.     Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this action because the amount in controversy, exclusive of interest and costs, exceeds $75,000 against each defendant and because it is between citizens of different states.

74.     Supplemental jurisdiction over the plaintiffs' state law claims is proper pursuant to 28 U.S.C. § 1367.

75.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) whereas the vast majority of the acts at issue in this Complaint were carried out within the Eastern District of Michigan.

## IV.     BACKGROUND ON THE DEFENDANTS' FRAUDULENT SCHEME

76.     Kallil Kazan and Khanafer purchased 4953 Schaefer Road in Dearborn, Michigan on or about February 27, 2009.

77.     Shortly thereafter, on or about March 23, 2009, Salameh incorporated Elite Chiropractic.

78.     Once Elite Chiropractic was operational, Salameh, Khanafer, and Kallil Kazan embarked on a comprehensive scheme to solicit motor vehicle accident victims to bill for treatment that was improperly influenced by factors other than legitimate medical judgment in order to exploit the benefits available under Michigan's No-Fault Act.

79.    By and through Elite Chiropractic, Salameh, Khanafer, and Kallil Kazan billed Allstate for excessive and unnecessary chiropractic treatment, if any treatment was rendered at all.

80.    In order to obtain patients, Kallil Kazan and Khanafer used the alias "David Maskalaski" and a fictitious entity named "Auto Assurance" to purchase motor vehicle accident reports.

81.    Kallil Kazan and Khanafer then used these reports to solicit motor vehicle accident victims in order for Elite Chiropractic to bill for treatment that persons involved in motor vehicle accidents would not have obtained but for the improper contact by the defendants.

82.    The phone number listed on Auto Assurance's application to vendors belonged to Kallil Kazan.

83.    Additionally, the address for Auto Assurance on the application is the registered address for entities owned and controlled by Kallil Kazan and Khanafer, including Rotana Holdings, LLC ("Rotana Holdings").

84.    Between May 2012 and February 2013, Auto Assurance purchased more than $170,000 worth of motor vehicle accident reports from just one vendor.

85.    Mo Kazan—Kallil Kazan's brother—purchased these motor vehicle accident reports using cashier's checks.

86.     The defendants then reestablished their fraudulent scheme in Dearborn at a new location: 13700 Michigan Avenue.

87.     NMK Holdings LLC, which is owned and controlled by Khanafer, purchased 13700 Michigan Avenue in May 2013.

88.     On or about July 23, 2014, Khanafer organized defendant Core Health, an entity that bills for physical therapy and chiropractic treatment purportedly performed at 13700 Michigan Avenue.

89.     Defendants Salameh and Kallil Kazan submitted bills seeking payment for treatment purportedly performed at Core Health's 13700 Michigan Avenue location.

90.     On or about August 7, 2015, Mo Kazan, Kallil Kazan's brother, organized Straightway and added the transportation company to the defendants' fraudulent network.

91.     Rotana Holdings faxed Straightway's Articles of Organization to the State of Michigan.

92.     Rotana Holdings's registered address is the same as Elite Chiropractic, and Kallil Kazan is Rotana Holdings's resident agent.

93.     The defendants used Straightway to bill for transporting patients to Core Health.

94.     By and through Core Health, Salameh, Khanafer, and Kallil Kazan billed Allstate for excessive and unnecessary chiropractic treatment and physical therapy, if any treatment was rendered at all.

95.     On or about December 7, 2015, Khanafer organized defendant Applied Rehab, using "13702 Michigan Avenue" as its registered address in an attempt to hide its connection to Elite Chiropractic.

96.     Although Applied Rehab's registered address is 13702 Michigan Avenue, it is actually in the same building as Elite Chiropractic at 13700 Michigan Avenue.

97.     Kallil Kazan testified that Applied Rehab and Elite Chiropractic share office space:

> Q.     Does Applied Rehab share office space with Elite Chiropractic?
>
> A.     Well, yes.

98.     Salameh further testified that Elite Chiropractic rents its office space from Applied Rehab:

> Q.     And in terms of an agreement, is it some kind of rental agreement that you have with Applied for your space and your offices?
>
> A.     Yes.

99. In addition, patients have stated to Allstate that Applied Rehab and Elite Chiropractic coordinate treatment, often seeing the same patients during the same appointment.

100. Patients have also confirmed to Allstate that they sign in for chiropractic treatment and physical therapy in the same place.

101. Beginning in January 2016, Salameh, Khanafer, and Kallil Kazan stopped billing Allstate through Core Health and began billing Allstate through Elite Chiropractic and Applied Rehab.

102. Patients at Core Health were unaware that bills were now being submitted under an entirely different entity name.

103. For example, Patient J.W. (Claim No. 0389131368)[1] testified that she had never heard of Elite Chiropractic but confirmed that she continued treating with Salameh:

> Q. What about Elite Chiropractic, are you still going there?
>
> A. Who?
>
> Q. According to the records I have, you went to a place called Elite Chiropractic in Dearborn. Do you remember going there?
>
> A. No.

---

[1] To protect the confidentiality of the patients at issue herein, Allstate hereinafter refers to each by his or her initials and Allstate claim number.

Q.   Let me just make sure I'm not mistaken.  You don't remember seeing Dr. Naiel Salameh or Salameh, S-a-l-a-m-e-h, N-a-i-e-l?

A.   That's the same man that's from Core.

Q.   I see.  So Core is Elite Chiropractic?

A.   Yes.

104.   Straightway continued to bill Allstate for allegedly transporting patients to Elite Chiropractic and Applied Rehab.

105.   However, Straightway's ability to submit bills to insurers for medical transportation is wholly dependent upon the patient first being given a disability certificate from a physician indicating that the patient is medically disabled from driving.

106.   Likewise, under Michigan law, for dates of service before January 1, 2015, physical therapy had to be prescribed by an individual licensed to practice dentistry, medicine, osteopathic medicine and surgery, or podiatric medicine and surgery.  Mich. Comp. Laws § 333.17820(1).  For dates of service after January 1, 2015, physical therapy treatment must be prescribed by a licensed medical or osteopathic doctor if such treatment exceeds twenty-one (21) days or ten (10) visits. Mich. Comp. Laws. § 333.17820(1).  Thus, the defendant physical therapy clinics and their owners required a steady source to write prescriptions for physical therapy that allowed them to bill Allstate for months and years of excessive treatment.

107.   Accordingly, the defendants incorporated Huraibi into their fraudulent scheme.

108.   Salameh, Khanafer, and Kallil Kazan entered into a *quid pro quo* arrangement with Huraibi in order to obtain fraudulent disability certificates and physical therapy prescriptions.

109.   Huraibi provided disability certificates to patients as a matter of course, and nearly all of the patients at issue in this Complaint were supposedly medically disabled from driving, falsely justifying Straightway's bills for non-emergency medical transportation services.

110.   Huraibi further provided the physically therapy prescriptions that allowed Applied Rehab and Core Health to continue to bill Allstate for medically unnecessary physical therapy.

111.   In return, Salameh, Khanafer, and Kallil Kazan referred patients to Huraibi for medically unnecessary pain management services.

112.   Thus, Huraibi was able to bill Allstate for allegedly evaluating patients for disability and physical therapy, as well as allegedly rendering unnecessary treatment himself.

113.   Together, the defendants engaged in a comprehensive scheme to bill Allstate for as much treatment as possible, without regard to medical necessity or established standards of care.

## V.   BILLING FOR SERVICES NOT RENDERED

114.   In pursuit of their objective of maximizing payment by Allstate, the defendants faxed and mailed bills seeking payment for treatment and services that were not actually rendered.

115.   All of the claims submitted by the defendants to Allstate through interstate wires and the U.S. Mail seeking payment for treatment that never actually occurred are fraudulent.

116.   Allstate is not required to pay the defendants for services that were never provided to patients at issue in this Complaint and is entitled to recover any payments tendered to the defendants in reliance on their fraudulent billing for services not rendered.

### A.   PHYSICAL THERAPY NOT RENDERED

117.   Applied Rehab and Core Health submitted bills to Allstate for physical therapy that was never rendered to patients at issue in this Complaint.

118.   As discussed further below, Applied Rehab and Core Health billed for nearly identical courses of treatment for almost every patient, regardless of their age, injury, comorbidities, and medical history.

119.   The majority of the treatments and modalities used in these protocol treatments were timed services for which each unit billed to an insurer represents fifteen (15) minutes of treatment.

120.   The American Medical Association ("AMA") coding rules require a minimum of eight (8) minutes of treatment be performed in order to bill for a single unit of a timed service.

121.   To properly bill for multiple units of a timed service, a provider must perform the full fifteen (15) minutes of service for the first (and any subsequent) unit, and at least eight (8) minutes of service for the second (or subsequent) unit.

122.   Thus, in order to properly bill for three (3) units of a timed service, a minimum of thirty-eight (38) minutes of the timed service must be performed.

123.   Applied Rehab and Core Health submitted bills for timed therapeutic exercises that failed to meet the AMA requirements.

124.   Current Procedural Terminology ("CPT") Code[2] 97110 indicates therapeutic procedures performed on one or more areas of the body, with each billed unit representing fifteen (15) minutes of treatment.

125.   As explained above, in order to properly bill for three (3) units of CPT Code 97110, a minimum of thirty-eight (38) minutes of the therapeutic procedure must be performed.

_____

[2] CPT Codes are published annually by the AMA to facilitate the efficient processing of healthcare charges by insurance carriers and other private and governmental healthcare payors.

126.   Applied Rehab and Core Health repeatedly billed Allstate for three (3) units of CPT Code 97110 for patients who received less than thirty-eight (38) minutes of therapeutic exercises.

127.   For example, in relation to patient M.A. (Claim No. 0378562672), Core Health billed Allstate for three (3) units of CPT Code 97110 on thirty-nine (39) dates of service from October 5, 2015 through December 30, 2015.

128.   Core Health never rendered the minimum thirty-eight (38) minutes of therapeutic exercises on any of these dates of service.

129.   After the defendants stopped billing through Core Health and switched to Applied Rehab in January 2016, Applied Rehab then billed Allstate for three (3) units of CPT Code 97110 on nineteen (19) dates of service between January 13, 2016 and April 1, 2016 related to M.A.

130.   Applied Rehab never rendered the minimum thirty-eight (38) minutes of therapeutic exercises on any of these dates of service.

131.   Applied Rehab and Core Health routinely billed Allstate for more time than was actually spent allegedly rendering treatment, as exemplified by patient M.A.

132.   In addition, Applied Rehab and Core Health failed to consistently record the amount of time purportedly spent performing each timed service.

133.   It is improper to submit bills for timed services when the time spent for each treatment is not accurately recorded.

134.   Applied Rehab's and Core Health's failure to measure and record the time spent performing treatment was intended to conceal the fact that they did not perform treatment for the length of time required to bill Allstate.

135.   Several patients of Applied Rehab and Core Health reported to Allstate that their treatments did not last long enough to support the number of units billed.

136.   In fact, some patients have confirmed that they were not actually present at Applied Rehab or Core Health on dates for which physical therapy was billed to Allstate.

137.   For example, Core Health charged Allstate $3,640.00 for treatment allegedly rendered to patient W.B. (Claim No. 0389131368) and patient L.B. (Claim No. 0389131368), who are both minors.

138.   However, their mother told Allstate that neither W.B. nor L.B. treated at Core Health.

139.   Patient S.W. (Claim No. 0389131368) testified that her appointments at Applied Rehab never lasted more than thirty (30) minutes.

140.   Nonetheless, Applied Rehab billed Allstate for treatment relating to S.W. lasting well over thirty (30) minutes.

141.   For example, on February 17, 2016, Applied Rehab billed Allstate for 53 minutes of treatment as follows: fifteen (15) minutes of hot/cold packs, fifteen (15) minutes of electric stimulation ("e-stim"), and twenty-three (23) minutes of therapeutic exercises.

142.   Likewise, patient D.C. (Claim No. 0375985256) told Allstate that his therapeutic exercises at Core Health never lasted for more than thirty (30) minutes.

143.   Yet, Core Health billed Allstate for therapeutic exercises lasting longer than thirty (30) minutes in relation to at least fifteen (15) dates of service.

144.   Allstate is not required to pay the defendants for services that were not actually rendered and is entitled to restitution for claims it was induced to pay by the defendants' fraudulent submissions.

## B.   TRANSPORTATION SERVICES NOT PROVIDED

145.   Straightway submitted bills to Allstate for transportation that was never provided to patients at issue in this Complaint.

146.   Straightway billed Allstate for transporting patients to Applied Rehab and Elite Chiropractic on dates when the patient did not receive any treatment.

147.   For example, Straightway billed Allstate for transporting patient K.B. (Claim No. 0468996672) to Elite Chiropractic on December 9, 2016 and February 13, 2017.

148.   However, K.B. did not receive any treatment from Elite Chiropractic on either date.

149.   Straightway created template transportation logs to perpetuate its fraudulent scheme.

150.   Straightway sent Allstate documents purporting to identify the date, pick-up location, drop-off destination, and time of pick-up.

151.   Straightway manufactured these documents in an attempt to hide the fact that it was not providing the alleged transportation services.

152.   In some cases, Straightway purported to transport the same patient to multiple locations on the same date at the same time.

153.   For example, Straightway billed Allstate for transporting patient Y.A. (Claim No. 0378562672) twice on October 7, 2015.

154.   Straightway submitted two (2) separate transportation logs for the trips: one identifying Core Health as the destination and the other identifying Michigan Sports Medicine P.C. as the destination.

155.   Both logs indicate that Straightway picked up Y.A. at 4:00 p.m.

156.   It is not possible to pick up a passenger and transport him to two (2) distinct locations at the same time.

157.   As another example, Straightway billed Allstate for transporting patient E.C. (Claim No. 0444334346) twice on April 10, 2017: once from his residence to

Elite Chiropractic and once from Elite Chiropractic to Dearborn Pain Specialists,

PLC ("Dearborn Pain Specialists").

158.   Straightway submitted separate transportation logs for the trips, both

indicating that Straightway picked up E.C. at 11:00 a.m.

159.   Again, it is not possible to pick up a passenger and transport him to two

(2) distinct locations at the same time.

160.   Yet, Straightway claimed to have done so on numerous occasions,

including the following representative claims:

- Patient R.C. (Claim No. 0466646130) testified that Straightway never transported him from his residence in Detroit to appointments in Dearborn twice on the same day.  Straightway billed Allstate alleging to have transported R.C. twice on the same day from his residence in Detroit to multiple locations in Dearborn on at least seven (7) dates of service.   On at least three (3) dates, Straightway submitted transportation logs indicating that Straightway picked up R.C. and drove him to two (2) different locations at the exact same time. Straightway also billed Allstate for allegedly transporting R.C. to Applied Rehab and/or Elite Chiropractic on four (4) dates when neither Applied Rehab nor Elite Chiropractic rendered treatment to R.C.  In total, Straightway billed Allstate $2,208.80 for transportation services that were never rendered to R.C.

- Straightway billed Allstate for two (2) roundtrips on October 3, 2016 relating to T.M. (Claim No. 0453318891): one (1) roundtrip from his residence to Elite Chiropractic and a second roundtrip from his residence to Huraibi Pain & Rehab Institute.   However, the transportation logs that Straightway submitted for these trips indicate that Straightway picked T.M. up at the exact same time to take him to two (2) different places.   Straightway also billed Allstate for transporting T.M. to Elite Chiropractic on November 3, 2016. However, T.M. did not receive treatment at Elite Chiropractic on that date.  Straightway billed Allstate for allegedly transporting T.M. to two

(2) separate and distinct locations on May 18, 2017: one (1) roundtrip from his residence to Elite Chiropractic and a second roundtrip from his residence to HS Management.    Straightway submitted transportation logs for these two (2) trips that once again indicate that Straightway picked T.M. up at the exact same time to take him to two (2) different places.   Straightway billed Allstate $591.20 for these transportation services that were never rendered.

- Straightway billed Allstate for transporting L.L. (Claim No. 0434095294) to two (2) separate and distinct locations on November 2, 2016: one (1) roundtrip from his residence to Elite Chiropractic and a second roundtrip from his residence to Huraibi Pain & Rehab Institute. Straightway's transportation logs for these two (2) trips indicate that Straightway picked up L.L. at 10:00 a.m. to transport him to Huraibi Pain & Rehab Institute and then picked him up again just a minute later at 10:01 a.m. to transport him to Elite Chiropractic.  Straightway billed Allstate $204.80 for these transportation services that were never rendered.

## VI.   THE DEFENDANTS BILLED FOR TREATMENT THAT WAS IMPROPERLY INFLUENCED BY FACTORS OTHER THAN LEGITIMATE MEDICAL JUDGMENT

161.   Michigan law prohibits "[a]ny physician or surgeon engaged in the practice of medicine in this state" to "employ any solicitor, capper, or drummer for the purpose of procuring patients."  Mich. Comp. Laws § 750.429.

162.   Other conduct prohibited under Michigan law ranges from the identification and solicitation of potential patients of medical providers, to the use of agents to solicit patients, and to the receipt of fees obtained through such fraudulent methods, including the mere participation in any schemes relating to such activity.  *See* Mich. Comp. Laws §§ 750.410b, 750.429, 257.503, and 500.4503(h)-(i).

163.   It is illegal in Michigan to contact any motor vehicle accident victim to offer a service within thirty (30) days of the accident, Mich. Comp. Laws § 750.410b, or use police reports to solicit any person identified in the report, Mich. Comp. Laws § 257.503(1)(a).

164.   Only "lawfully-render[ed] treatment" is compensable under Michigan's No-Fault Act.  Mich. Comp. Laws § 500.3157(1).

165.   As discussed *supra*, defendants Kallil Kazan and Khanafer obtained police reports through the fictitious company Auto Assurance in order to illegally solicit victims of motor vehicle accidents.

166.   The defendants illicitly contacted motor vehicle accident victims within days of their alleged motor vehicle accident.

167.   After contacting the victims, the defendants then travelled to their homes in order to transport them to Applied Rehab and Elite Chiropractic.

168.   Indeed, several patients of Applied Rehab and Elite Chiropractic recounted nearly identical stories of how they were solicited by these facilities in direct violation of Michigan Law.

169.   One such patient, V.B. (Claim No. TXA-0201691) testified that Elite Chiropractic contacted her through an "ambulance chaser" working on behalf of Elite Chiropractic:

> Q.   How do you find Elite?
>
> A.   Elite found me.
>
> Q.   How does that work?
>
> A.   Just like all those ambulance chasers do out there in
>      the street.
>
> Q.   So Elite called you.
>
>           Do you recall the name of the person at
>      Elite that called you?
>
> A.   Forgot his name.
>
> Q.   Is that a male that called you from Elite?
>
> A.   Yes.
>
> Q.   What did he say?
>
> A.   He just said he heard I was in a accident.  I said How
>      did you find that out?  He said he got a accident
>      report, and from there I went to Elite, Applied and
>      Elite.

170.   Another patient, E.C. (Claim No. 0444334346), stated to Allstate that Applied Rehab called him within one week of his alleged motor vehicle accident:

> They called me.  I am not quite sure if they saw the police
> report and then called me . . . they called me and said, hey,
> come out and we can set you up.

171.   A representative from Applied Rehab told E.C. "basically about what they do," and proceeded to pick up E.C. at his residence and transport him to Applied Rehab.

172.   Yet another patient, J.W. (Claim No. 0389131368), testified that someone called her to solicit her to treat at Applied Rehab:

> Q.   And so how did you end up at Applied Rehab the next day; did they call you to schedule an appointment for you?  Did someone from their office call you and say, you know, heard you were in an accident, come in, we'll help you fill out an application?  How did that all happen?
>
> A.   Somebody called me.

173.   Upon information and belief, Applied Rehab paid patients $50 to attend physical therapy.

174.   Bills submitted to Allstate seeking payment for treatment relating to patients who were improperly influenced to present to the Defendant Entities by factors other than legitimate medical judgment and who would not have presented to the defendants but for the illicit contact are unlawful and not compensable under Michigan law.

## VII.   BILLING FOR UNLAWFUL AND UNLICENSED SERVICES

175.   Not only did Straightway bill Allstate for transportation services not rendered, as discussed *supra*, but it also billed for unlicensed medical transportation services.

176.   Prior to March 21, 2017, the State of Michigan required non-emergency medical transport vehicles to obtain a Certificate of Authority through the Department of Transportation.

177.   From March 21, 2017 through the present, the State of Michigan requires that medical transportation companies register with the Department of Licensing and Regulatory Affairs ("LARA").  Mich. Comp. Laws § 257.2104(1).

178.   However, Straightway did not register with LARA until October 18, 2017.

179.   Therefore, Straightway billed Allstate for unlawful transportation services from March 21, 2017 through October 17, 2017.  *See* Exhibit 4.

180.   Allstate is not required to pay Straightway for unregistered and unlawful transportation services.

## VIII.  <u>EXCESSIVE AND MEDICALLY UNNECESSARY TREATMENT</u>

181.   The defendants billed Allstate for excessive and medically unnecessary treatment, if provided at all, that consisted of unnecessary injections, various procedures, anesthesia, excessive and unwarranted physical therapy and chiropractic treatment, unnecessary transportation services, and prescriptions for highly addictive narcotic medications designed to ensure patients continued to present to the defendants on a regular basis, allowing the defendants to continue to fraudulently bill Allstate.

### A.   <u>PREDETERMINED TREATMENT PROTOCOL</u>

182.   Allstate's investigation revealed a strikingly similar pattern of alleged diagnoses and treatment across all patients: (1) routinely recording substantially

similar diagnoses regardless of the patient's reported injuries, (2) providing mirrored treatment plans further confirming that patients were subjected to a predetermined treatment protocol, and (3) listing identical short- and/or long-term goals for patients in the instances such goals were even provided.

183.   Each patient was assessed as having extremely similar reports of complaints, objective findings, and assessments regardless of the type of accident and regardless of each patient's age, sex, comorbidities, and pre-accident condition.

184.   For example, Elite Chiropractic diagnosed nearly every patient at issue in this Complaint as having (1) a sprain/strain in the cervical spine, thoracic spine, and lumbar spine; (2) myofascitis; and (3) subluxations in the cervical spine, thoracic spine, lumbar spine, and pelvis.

185.   Considering the differences in accident, age, health, and levels of fitness for the patients at issue in this Complaint, it is extremely unlikely that nearly every patient had myofascitis and the same issues in all three (3) spinal regions.

186.   Core Health's and Elite Chiropractic's patient records contained nearly identical "Treatment Options," which did not account for individual patient circumstances.

187.   Each patient's records contained the following template "Treatment Options":

> Lumbar, thoracic, cervical and pelvic joint spine manipulation will be used to increase range of motion and

restore proper function.  Myofascial release will be used to the area of hypertonic muscles to increase vascularization, to decrease muscle spasms, and to increase range of motions.  Mechanical traction (Intersegmental traction) will be used to increase mobility, decrease muscle spasms, widen the intervertebral space and decrease intradiscal pressure of the spine.  Heat and cold pack can also be used to decrease inflammation and the muscle spasms.  Stretching and strengthening exercises will be used for Neuro Muscular Re-Education and strengthening the muscles of the spine and pelvis. Ultrasound will be used to help decrease inflammation and help break up any adhesions.  Muscle Stimulation/Interferential Current will be used to increase localized blood flow, pain reduction, and help stimulate muscle for muscle contraction.

188.  Core Health and Elite Chiropractic also included boilerplate "Plan Options" using the following language for nearly every patient (emphasis original):

Treatment will consist of three times a week for the next four-six weeks of Chiropractic manipulation, mechanical traction, Ultrasound, and Muscle Stimulation/Interferential.  Stretching and strengthening exercises will be added to the treatment plan to strengthen the core, pelvic, and paraspinal muscles.  Also, heat and cold therapy will be used for pain control and decrease inflammation.  After 12-14 visits, a complete re-evaluation of the patient will be conducted.  At that time, we will make future recommendations for care.  **I advised the patient to avoid any activities that may aggravate his symptoms.  Furthermore, I advised to the patient if his symptoms get worse to go to the nearest emergency room.**

189.  Applied Rehab included nearly identical treatment plans in each initial evaluation:

| | Interventions/Plan |
|---|---|
| Hot/Cold Packs - Modality to 1+ Areas 97010 | |
| Electrical Stimulation (Unattended) - Modality to 1+ Areas 97014 | |
| Massage - Therapeutic Procedure - 1+ Areas 97124 | |
| Manual Therapy Techniques - 1+ Regions 97140 | |
| Therapeutic Exercises - Therapeutic Procedure - 1+ Areas 97110 | |
| Evaluation - Physical Therapy 97001 | |
| Physical Therapy Re-Evaluation 97002 | |

190.   The defendants also engaged in symptom magnification, often alleging symptoms and diagnoses that conflicted with findings by other providers.

191.   By magnifying symptoms, the defendants sought to justify prolonged, unnecessary treatment and referrals to each other in furtherance of their scheme.

192.   By and through this protocol, the defendants engaged in a predetermined and formulaic pattern of treatment and referrals.

193.   First, patients initiated chiropractic treatment at Core Health or Elite Chiropractic.

194.   Then, Core Health or Elite Chiropractic referred patients to pain management physicians, such as Huraibi, Huraibi Pain & Rehab Institute, and HS Management, in order to obtain a physical therapy prescription.

195.   Huraibi, Huraibi Pain & Rehab Institute, and HS Management provided the patients with a prescription for physical therapy, which was then billed by Core Health or Applied Rehab.

196.   Huraibi, Huraibi Pain & Rehab Institute, and HS Management also provided the patients with a disability certificate fraudulently documenting the need for transportation services, which were then billed by Straightway.

197.   The predetermined protocol is confirmed by the modalities that Elite Chiropractic and Applied Rehab billed to Allstate.

198.   After the initial evaluation, Elite Chiropractic billed Allstate using CPT Codes 98940 or 98941, 97012, 97014, 97010, and 97035 on virtually every date of service for every patient.  *See* Exhibit 2.

199.   However, once the patient initiated physical therapy at Applied Rehab, Elite Chiropractic only billed Allstate for CPT Codes 98940 or 98941 and 97012. Id.

200.   Applied Rehab—located in the same space as Elite Chiropractic—then billed Allstate for CPT Codes 97014 (electrical stimulation (unattended)), 97010 (hot/cold packs), and 97035 (ultrasound), as well as CPT Code 97110 (therapeutic exercise), on nearly every date of service for every patient.  *See* Exhibit 1.

201.   Salameh confirmed that Elite Chiropractic stops billing for electrical stimulation, hot/cold packs, ultrasound, and therapeutic exercises once a patient allegedly presents to Applied Rehab:

```
Q.   Okay.  How do you differentiate that treatment or how
     do you coordinate that treatment with Applied?
A.   Well, once I know they started physical therapy
     treatment then we stop billing for certain codes that I
     know the therapists have done before.
Q.   Okay.  And in this case which codes did you stop or
     which --
A.   Like the hot pack, ultrasound, E-stim, if I did any
     therapeutic exercises.
```

202.   Because Applied Rehab and Elite Chiropractic share the same office space, Salameh further testified that he stops billing for treatment when the receptionist at the front desk advises him that the patient presented to Applied Rehab:

```
Q.   Sure.  And in the instance that you're doing the
     treatment first, do you refer back to, you know, the
     last record of physical therapy so that you're not
     going ahead and doing the hot and cold packs when then
     they would be doing the same thing?
A.   I mean the main thing is the front desk will tell me
     this patient is starting physical therapy today, you'll
     probably -- well, you have a new patient, he's starting
     his care today, then I'll know.
```

203.   The systematic approach to billing for the same modalities for every patient demonstrates that the defendants billed Allstate for predetermined treatment that was not tailored to individual patient needs.

204.   As part of their predetermined protocol, the defendants billed for monthly patient evaluations that had no effect on treatment.

205.   The defendants used these monthly evaluations not to determine whether the patient actually responded to purportedly rendered treatment, but rather to continue referring the patients for unnecessary treatment and services within their network with the sole goal of generating profit for themselves.

### B.   UNNECESSARY AND EXCESSIVE CHIROPRACTIC TREATMENT

206.   Core Health and Elite Chiropractic billed for nearly identical treatment to every patient at issue in this Complaint, confirming that treatment was rendered pursuant to a predetermined protocol, if rendered at all, and not based on the specific needs of each patient.

207.   Core Health and Elite Chiropractic billed Allstate for excessive chiropractic treatment that violated chiropractic guidelines and standards of care, if rendered at all.

208.   The Guidelines for Chiropractic Quality Assurance and Practice Parameters, commonly referred to as the "Mercy Guidelines," state that "manual procedures may no longer be appropriate and alternative care should be considered" when a patient fails to show significant documented improvement after four (4) weeks.

209.   If there is a lack of improvement during the first four (4) weeks of treatment, then the patient's plan of care should be re-evaluated and adjusted as appropriate.

210.   Otherwise, the chiropractic treatment cannot be justified as it is no longer medically necessary once it is no longer effective.

211.   Indeed, the Center for Medicare & Medicaid Services ("CMS") states that anything beyond twelve (12) visits per year is excessive, and that there is a greater likelihood that continued care is not medically indicated for any treatment beyond twenty-four (24) visits.

212.   The American Chiropractic Association ("ACA") wrote a letter to CMS and agreed with the need for limitations in chiropractic treatment.

213.   The ACA professed support for a national soft cap of eighteen (18) visits and a hard cap, requiring further justification, of twenty-four (24) visits.

214.   Nonetheless, Core Health and Elite Chiropractic continued billing for chiropractic treatment for months—sometimes years—on end despite the patient failing to show any improvement.

215.   For example, the defendants allegedly rendered chiropractic treatment to patient K.B. (Claim No. 0468996672) for one (1) year and three (3) months—116 visits—without any benefit.

216.   Such was the case with nearly every patient at issue in this Complaint.

217.   Core Health and Elite Chiropractic also violated the standard of care by billing for chiropractic treatment on consecutive days.

218.   Delivery of chiropractic care on consecutive dates cannot be substantiated as medically necessary unless specific sets of circumstances are identified.

219.   Yet Core Health and Elite Chiropractic billed Allstate for allegedly rendering chiropractic treatment on consecutive days to nearly every patient at issue in this Complaint without documenting any specific circumstances necessitating chiropractic care on consecutive days.

### C.   UNNECESSARY AND EXCESSIVE PHYSICAL THERAPY

220.   Core Health and Applied Rehab billed Allstate for physical therapy performed in violation of established standards of care.

221.   Under Michigan law, for dates of service before January 1, 2015, physical therapy had to be prescribed by an individual licensed to practice dentistry, medicine, osteopathic medicine and surgery, or podiatric medicine and surgery. Mich. Comp. Laws § 333.17820(1).

222.   For dates of service after January 1, 2015, physical therapy treatment must be prescribed by a licensed medical or osteopathic doctor if such treatment exceeds twenty-one (21) days or ten (10) visits.  Mich. Comp. Laws. § 333.17820(1).

223.   Because the defendant physical therapy clinics frequently billed Allstate for alleged treatment that extended for many months or years, nearly all of the alleged treatment at issue herein required a prescription.

224.   Because the defendant physical therapy clinics frequently began billing Allstate for treatment within days or weeks of the alleged occurrence of accidents, physical therapy treatment of the patients at issue herein was frequently initiated before a prescription was written.

225.   In such instances, the defendant physical therapy clinics arranged for patients to obtain *pro forma* prescriptions from physicians associated with the clinics, including defendants Huraibi, Huraibi Pain & Rehab Institute, and HS Management, and treatment invariably continued using the same predetermined plan that had already been initiated.

226.   Physical therapy must be objectively indicated; that is, a patient's subjective complaints of pain are not sufficient to justify more than a few weeks of physical therapy.

227.   However, Applied Rehab and Core Health based their physical therapy treatment on patients' subjective symptoms alone.

228.   Prescriptions that were issued without a sufficient independent examination and medical determination, and which merely ordered the continuation

of the course of treatment that had already been initiated by the defendant physical therapy clinics, are insufficient to establish medical necessity.

229.    Huraibi, Huraibi Pain & Rehab Institute, and HS Management routinely issued physical therapy prescriptions to patients they allegedly evaluated as "Fast Track" patients.

230.    The records relating to Huraibi's "Fast Track" patients never document any kind of exam prior to the patient being issued a physical therapy prescription (or a disability certificate as discussed *infra*).

231.    In addition, the physical therapy treatment billed by Core Health and Applied Rehab rarely varied from patient to patient, evidencing that treatment was rendered pursuant to a predetermined protocol that was not individualized to each patient's clinical symptoms and needs.

232.    Applied Rehab used template short-term and long-term goals, when it provided goals at all for patients at issue in this Complaint.

233.    Nearly every patient at issue in this Complaint had short-term goals to (1) reduce "joint inflammation, or restriction & pain" by 25% in 2 weeks; (2) reduce pain by 25% in 2 weeks; (3) improve postural control by 25% in 2 weeks; and (4) improve range of motion by 25% in 2 weeks.

234.  Applied Rehab included the same "Frequency of PT" ("Three times weekly") and the same "Duration of PT" ("4 weeks") in the initial evaluation for every patient at issue in this Complaint.

235.  The goal of physical therapy is to transition to a home exercise program; however, Core Health and Applied Rehab billed for physical therapy far beyond any reasonable expectation.

236.  Core Health and Applied Rehab also billed for physical therapy to patients at issue in this Complaint who were allegedly receiving chiropractic care at the same time—indeed, on the same date—as the physical therapy.

237.  Concurrent physical therapy and chiropractic treatment is not necessary if either is properly provided, as both use largely the same treatment modalities.

238.  Applied Rehab made treatment decisions based on the amount of money that it could bill Allstate and not based on the amount of treatment that the patients at issue in this Complaint required.

239.  Abhijeet Vaidya, a physical therapist at Applied Rehab, testified that Applied Rehab billed for therapeutic exercises for a particular amount of time because that was the minimum amount of time for which it could bill for two (2) units of therapeutic exercises:

> Q.    I notice that the therapeutic exercises billed under
>        CPT code 97110 were billed at 23 minutes, and that
>        happened several times in a row. And the way I look
>        at it, 23 minutes is kind of an odd number of

minutes.  My question to you is, is 23 minutes actually kind of like a standard increment of minutes that you provide therapeutic exercises for a patient?

A.    It's a Medicare rule of this certain number of minutes and we follow that rule.  It's called [the] eight-minute rule, you know.  And for therapeutic [exercises] is [sic] minimum 23 minutes.  So you can Google it, and you can find that rule.

240.  Vaidya's testimony confirms that Applied Rehab billed Allstate not based on actual patient need (which would not be exactly 23 minutes for every single patient), but rather Applied Rehab billed Allstate with the sole goal of profiting as much as possible while doing the least amount possible in a clear money grab that did not include any considerations of actual patient need.

241.  Allstate is not required to pay Applied Rehab and Core Health for medically unnecessary physical therapy treatment and it is entitled to the return of money paid in reasonable reliance on the defendants' fraudulent bills.

### D.    MEDICALLY UNNECESSARY INJECTIONS

242.  Huraibi, Huraibi Pain & Rehab Institute, and HS Management subjected their patients to a battery of unnecessary and dangerous epidural steroid injections, facet joint injections, and other injection-related services.

243.  The performance of invasive procedures (such as injections) for the relief of pain must be based upon adequate diagnosis and legitimate medical necessity.

244.   A physician should resort to injections only after a patient does not respond to more conservative forms of care.

245.   However, Huraibi, Huraibi Pain & Rehab Institute, and HS Management billed for performing injections on patients while they continued physical therapy treatment.

246.   In fact, Huraibi, Huraibi Pain & Rehab Institute, and HS Management billed Allstate for injections on patients who allegedly received physical therapy treatment the following day.

247.   Conducting injections before providing a patient with an opportunity to respond to conservative treatment modalities demonstrates the fraudulent and medically unnecessary nature of the injections.

248.   Huraibi, Huraibi Pain & Rehab Institute, and HS Management resorted to injections in the initial stages of treatment as a matter of course.

249.   The defendants rarely allowed conservative treatment to run its course prior to recommending patients for injections.

250.   Allstate is not required to pay the defendants for medically unnecessary injections that were only recommended and billed to bolster claims submitted to Allstate.

### E.    IMPROPER INDUCEMENTS

251.   Huraibi played an indispensable role in the defendants' scheme, as he provided the disability certificates and physical therapy prescriptions that allowed the other defendants to bill for excessive and unnecessary treatment and services.

252.   Huraibi also was responsible for providing the incentives that induced patients to attend treatment several days per week for months, and, in many cases, years.

253.   As part of the defendants' predetermined treatment protocol, Huraibi, Huraibi Pain & Rehab Institute, and HS Management required patients to present for a purported evaluation on a monthly basis.

254.   At each monthly follow-up, Huraibi, Huraibi Pain & Rehab Institute, and HS Management provided patients with *pro forma* disability certificates prescribing unnecessary replacement services, attendant care, and transportation.

255.   The certificates were not based on the individual needs of each patient and corresponding records consistently failed to document medical necessity.

256.   In truth, patients were informed that they could "hire" friends and family members to perform the replacement services and attendant care and that the insurance companies would pay them for these services for every day they were in treatment.

257.   Thus, the disability certificates served as a kind of payment that patients could only receive by attending their appointments and other unnecessary treatment with the defendants.

258.   In addition, Huraibi, Huraibi Pain & Rehab Institute, and HS Management also prescribed patients opioid drugs, which are easily abused and can be resold illegally for thousands of dollars.

259.   Huraibi prescribed the same drugs to patients at their initial appointment, which were re-filled at nearly every appointment thereafter, including Norco, Tramadol, Cyclobenzaprine, and a nonsteroidal anti-inflammatory drug.

260.   In many cases, the medications were not indicated at all for the treatment of the patient's purported condition.

261.   Huraibi's, Huraibi Pain & Rehab Institute's, and HS Management's frequent prescription of opioid pain medication is particularly egregious, as it contributed to a significant public health crisis in Michigan.

262.   On October 26, 2015, a bipartisan task force formed by then Michigan Governor Rick Snyder issued a report "addressing the growing prescription drug and opioid problem in Michigan."

263.   The task force reported:

> Prescription drug abuse has reached epidemic proportions. The increased availability of prescription drugs, coupled with general misperceptions regarding the safety of physician-prescribed medications, has led to exponential

> growth of drug users and drug abusers.  In Michigan, the
> number of drug overdose deaths – a majority of which are
> from prescription drugs – has tripled since 1999.

264.   It has been estimated that the risk of addiction for patients receiving long-term prescriptions for opioid painkillers is as high as 56% of all such patients. Bridget A. Martell, et al., *Systematic Review: Opioid Treatment for Chronic Back Pain: Prevalence, Efficacy, and Association with Addiction*, 146(2) Ann. Intern. Med. 116-127 (2007).

265.   Nonetheless, Huraibi, Huraibi Pain & Rehab Institute, and HS Management prescribed narcotic medications as a matter of course at the expense of the proper care and safety of their patients and the safety of the community at large.

### F.   EXEMPLAR CLAIMS

266.   The following patients exemplify the fraudulent unnecessary and excessive medical treatment billed by the defendants relative to the patients at issue herein.

### 1.   Patient Y.A. (Claim No. 0378562672)

267.   Patient Y.A. was allegedly involved in a motor vehicle accident on July 8, 2015.

268.   He initiated chiropractic treatment at Core Health on September 1, 2015 with Salameh.

269.   Like nearly every patient at issue in this Complaint, Salameh's diagnoses for Y.A. included: (1) a sprain/strain in the lumbar spine and cervical spine; (2) myofascitis; and (3) subluxations in the lumbar spine, thoracic spine, cervical spine, and pelvis.

270.   Like almost every patient at issue in this Complaint, Salameh initiated a predetermined protocol of chiropractic treatment three (3) times a week.

271.   Salameh also provided Y.A. with a disability certificate indicating that he was disabled from driving as a result of the alleged accident despite the fact that Y.A. was thirteen (13) years old at the time and was never able to drive.

272.   Therefore, the transportation services billed by Straightway were not medically necessary or causally related to the alleged motor vehicle accident.

273.   Salameh renewed these disability certificates on a monthly basis.

274.   Core Health stopped treating Y.A. on December 30, 2015 and Elite Chiropractic started treating him on January 5, 2016.

275.   Y.A. allegedly initiated physical therapy treatment at Applied Rehab on January 7, 2016.

276.   Elite Chiropractic and Applied Rehab billed Allstate for chiropractic and physical therapy treatment on the same date of service seventeen (17) times, which violates the standard of care.

277.   Core Health and Elite Chiropractic billed for chiropractic treatment on consecutive days in violation of the standard of care.

278.   Treatment rendered in violation of established standards of care is unreasonable and medically unnecessary.

279.   Core Health, Elite Chiropractic, and Applied Rehab submitted claims for payment and accompanying medical records relative to Y.A. to Allstate through the U.S. Mail seeking payment for unreasonable and unnecessary treatment, upon which Allstate relied in adjusting the claims.

280.   Allstate is not required to pay Core Health, Elite Chiropractic, and Applied Rehab for the medically unnecessary treatment billed relative to Y.A., and is entitled to the return of monies it paid to Core Health, Elite Chiropractic, and Applied Rehab for the medically unnecessary treatment.

### 2.   Patient B.S. (Claim No. 0476135181)

281.   Patient B.S. was allegedly involved in a motor vehicle accident on September 20, 2017.

282.   B.S. presented to Elite Chiropractic five (5) days later on September 25, 2017 for an initial evaluation with Salameh.

283.   Like almost every patient at issue in this Complaint, Salameh's diagnoses for B.S. included (1) sprains/strains in cervical spine, thoracic spine, and

lumbar spine; (2) myofascitis; and (3) subluxations in the cervical spine, thoracic spine, lumbar spine, and pelvis.

284.   Like nearly every patient at issue in this Complaint, Salameh initiated a predetermined protocol of chiropractic treatment three (3) times a week.

285.   Elite Chiropractic billed Allstate for CPT Codes 97010, 97014, 97035, 97012, and 98941 on September 26, 2017 and September 27, 2017.

286.   B.S. initiated physical therapy at Applied Rehab on October 2, 2017 without a physical therapy prescription.

287.   The next day, on October 3, 2017, Huraibi, by and through HS Management, provided B.S. with a physical therapy prescription without conducting an evaluation of B.S.

288.   As per the defendants' protocol, Applied Rehab began billing Allstate for treatment that Elite Chiropractic allegedly rendered before B.S. obtained a physical therapy prescription.

289.   From October 2, 2017 through February 2, 2018, Elite Chiropractic and Applied Rehab continued billing Allstate for concurrent chiropractic and physical therapy treatment, which violates the standard of care.

290.   In addition, Huraibi, by and through Huraibi Pain & Rehab Institute, continued to renew B.S.'s physical therapy prescription even though B.S. failed to show improvement.

291.   At a follow-up appointment on December 7, 2017, B.S. stated that his pain was "about the same since the last visit."

292.   Nonetheless, Huraibi Pain & Rehab Institute renewed B.S.'s physical therapy prescription.

293.   Huraibi Pain & Rehab Institute renewed B.S.'s physical therapy prescriptions despite B.S. not demonstrating any improvement several times throughout the course of B.S.'s treatment.

294.   Elite Chiropractic, Applied Rehab, Huraibi Pain & Rehab Institute, and HS Management submitted claims for payment and accompanying medical records relative to B.S. to Allstate through the U.S. Mail seeking payment for unreasonable and unnecessary treatment, upon which Allstate relied in adjusting the claims.

295.   Allstate is not required to pay Elite Chiropractic, Applied Rehab, Huraibi Pain & Rehab Institute, and HS Management for the medically unnecessary treatment billed relative to B.S., and is entitled to the return of monies it paid to Elite Chiropractic, Applied Rehab, Huraibi Pain & Rehab Institute, and HS Management for the medically unnecessary treatment.

### 3.    Patient M.F. (Claim No. 0426792354)

296.   Patient M.F. was allegedly involved in a motor vehicle accident on August 28, 2016.

297.   M.F. was allegedly examined at Elite Chiropractic on September 22, 2016.

298.   Elite Chiropractic's exam records refers to the patient by the wrong name: "Mr. Long," confirming that M.F.'s record was recycled from another patient and was not patient-specific.

299.   Elite Chiropractic began billing for chiropractic treatment relating to M.F. on September 22, 2016 and Applied Rehab began billing for physical therapy relating to M.F. on October 5, 2016.

300.   On September 30, 2016, Huraibi, by and through Huraibi Pain & Rehab Institute, provided M.F. with a physical therapy referral without first conducting an evaluation of M.F.

301.   Huraibi Pain & Rehab Institute billed Allstate for a trigger point injection in relation to M.F. on November 7, 2016.

302.   The next day after the first injection, Elite Chiropractic allegedly provided chiropractic manipulative therapy to M.F.'s cervical region, which is the same region to which M.F. allegedly received a trigger point injection the day before.

303.   Performing injections before providing a patient with an opportunity to respond to conservative treatment modalities demonstrates the fraudulent and medically unnecessary nature of the injections.

304.   Furthermore, there were no changes in M.F.'s treatment plan after the trigger point injection.

305.   Elite Chiropractic billed Allstate for nine (9) months of chiropractic treatment, which far exceeds chiropractic standards of care.

306.   Applied Rehab billed Allstate for nine (9) months of physical therapy, which far exceeds established standards of care.

307.   Elite Chiropractic and Applied Rehab billed Allstate for allegedly rendering concurrent chiropractic and physical therapy treatment, which also violates the standard of care.

308.   Elite Chiropractic, Applied Rehab, and Huraibi Pain & Rehab Institute submitted claims for payment and accompanying medical records relative to M.F. to Allstate through the U.S. Mail seeking payment for unreasonable and unnecessary treatment, upon which Allstate relied in adjusting the claims.

309.   Allstate is not required to pay Elite Chiropractic, Applied Rehab, and Huraibi Pain & Rehab Institute for the bills relative to M.F., and is entitled to the return of monies it paid to Elite Chiropractic, Applied Rehab, and Huraibi Pain & Rehab Institute for the medically unnecessary treatment.

### 4.   Patient K.B. (Claim No. 0468996672)

310.   Patient K.B. was allegedly involved in a motor vehicle accident on August 21, 2016.

311.   K.B. presented to Elite Chiropractic on September 23, 2016.

312.   Like nearly every patient at issue in this Complaint, Elite Chiropractic initiated a predetermined protocol of chiropractic treatment three (3) times a week.

313.   Like almost every patient at issue in this Complaint, Salameh's diagnoses for K.B. included (1) sprains/strains in cervical spine, thoracic spine, and lumbar spine; (2) myofascitis; and (3) subluxations in the cervical spine, thoracic spine, lumbar spine, and pelvis.

314.   Pursuant to the predetermined treatment protocol, K.B. was issued a prescription for physical therapy and a disability certificate by Huraibi, by and through Huraibi Pain & Rehab Institute, on September 30, 2016.

315.   Huraibi did not examine K.B. prior to issuing the prescription for physical therapy and disability certificate.

316.   K.B. presented to Applied Rehab to begin physical therapy on October 5, 2016.

317.   The record from K.B.'s initial exam at Applied Rehab incorrectly records the date of loss as August 21, 2013, supporting, again, that K.B.'s record was recycled from another patient and was not patient-specific but rather part and parcel of the defendants' predetermined treatment protocol.

318.    This is further evidenced by the fact that the record also contains patient complaints that conflict with Elite Chiropractic's alleged patient complaints in relation to K.B.

319.    Thereafter, Elite Chiropractic and Applied Rehab initiated K.B. on a protracted course of unnecessary and excessive treatment in violation of established standards of care.

320.    Elite Chiropractic and Applied Rehab billed Allstate for allegedly rendering concurrent chiropractic and physical therapy treatment, which violates the standard of care.

321.    Applied Rehab and Elite Chiropractic billed Allstate for allegedly rendering physical therapy and chiropractic treatment on the same dates of service 108 times.

322.    Elite Chiropractic billed Allstate for 116 dates of service over sixteen (16) months.

323.    Applied Rehab billed Allstate for 159 dates of service over seventeen (17) months.

324.    The treatment modalities and frequency remained the same despite monthly evaluations, confirming that the evaluations served no purpose other than to perpetuate unnecessary treatment to be billed to Allstate.

325.   Elite Chiropractic, Applied Rehab, and Huraibi Pain & Rehab Institute submitted claims for payment and accompanying medical records relative to K.B. to Allstate through the U.S. Mail seeking payment for unreasonable and unnecessary treatment, upon which Allstate relied in adjusting the claims.

326.   Allstate is not required to pay Elite Chiropractic, Applied Rehab, and Huraibi Pain & Rehab Institute for the medically unnecessary treatment billed relative to K.B., and is entitled to the return of monies it paid to Elite Chiropractic, Applied Rehab, and Huraibi Pain & Rehab Institute for the medically unnecessary treatment.

### 5.   Patient T.M. (Claim No. 0453318891)

327.   Patient T.M. was allegedly involved in a motor vehicle accident on September 16, 2016.

328.   T.M. presented to Elite Chiropractic less than a week later on September 21, 2016.

329.   Like almost every patient at issue in this Complaint, Salameh's diagnoses for T.M. included (1) sprains/strains in cervical spine, thoracic spine, and lumbar spine; (2) myofascitis; and (3) subluxations in the cervical spine, thoracic spine, lumbar spine, and pelvis.

330.   Like nearly every patient at issue in this Complaint, Elite Chiropractic initiated a predetermined protocol of chiropractic treatment three (3) times a week.

331.   Then, after T.M. initiated his course of treatment at Elite Chiropractic, T.M. was issued a physical therapy prescription by Huraibi, by and through Huraibi Pain & Rehab Institute, on October 3, 2016.

332.   T.M. presented to Applied Rehab for an evaluation on October 5, 2016.

333.   Applied Rehab started T.M. on a course of treatment in accordance with the defendants' predetermined protocol.

334.   Like with nearly every patient at issue in this complaint, Elite Chiropractic and Applied Rehab billed Allstate for allegedly rendering concurrent chiropractic and physical therapy treatment and chiropractic treatment on consecutive days, which violates established standards of care.

335.   The treatment modalities and frequency remained the same despite monthly evaluations, confirming that the evaluations served no purpose other than to perpetuate unnecessary treatment to be billed to Allstate.

336.   HS Management billed Allstate for Huraibi performing a facet joint injection on T.M. on November 3, 2016 in violation of the standard of care.

337.   Conducting injections before providing a patient with an opportunity to respond to conservative treatment modalities demonstrates the fraudulent and medically unnecessary nature of the injections.

338.   Elite Chiropractic, Applied Rehab, and Huraibi Pain & Rehab Institute submitted claims for payment and accompanying medical records relative to T.M.

to Allstate through the U.S. Mail seeking payment for unreasonable and unnecessary treatment, upon which Allstate relied in adjusting the claims.

339.   Allstate is not required to pay Elite Chiropractic, Applied Rehab, and Huraibi Pain & Rehab Institute for the medically unnecessary treatment billed relative to T.M, and is entitled to the return of monies it paid to Elite Chiropractic, Applied Rehab, and Huraibi Pain & Rehab Institute for the medically unnecessary treatment.

### 6.     Patient R.C. (Claim No. 0466646130)

340.   Patient R.C. was allegedly involved in a motor vehicle accident on October 27, 2016.

341.   R.C.'s first disability certificate was issued by Salameh by and through Elite Chiropractic on November 14, 2016.

342.   However, Straightway had already allegedly provided roundtrip transportation to R.C. on November 7, 2016 in addition to transporting him to Elite Chiropractic on November 14, 2016 prior to receiving a disability certificate.

343.   In addition, R.C. did not have a current disability certificate from January 12, 2017 through March 16, 2017.

344.   Straightway allegedly provided transportation to R.C. twenty-three (23) times during that period.

345.   Even when R.C. did have an active disability certificate, Straightway's transportation services still were not medically necessary or causally related to the accident because R.C.'s license had been suspended for at least four (4) years prior to the alleged motor vehicle accident.

346.   R.C. testified that he did not drive during that time and that if he needed to get to an appointment, he would either have a friend drive him or utilize public transportation.   Thus, R.C. confirmed that he did not need transportation services from Straightway.

347.   R.C.'s initial evaluation at Elite Chiropractic allegedly occurred on November 14, 2016.

348.   However, the record from that date of service does not mention R.C.'s serious heart condition, which confirms that Salameh did not adequately examine R.C.

349.   R.C. was placed on the same treatment protocol despite his heart condition, which serves as further evidence that the defendants were more concerned with maximizing their charges to Allstate than patient care.

350.   This is further evidenced by the fact that Huraibi referred R.C. to physical therapy for alleged pain in his right wrist and to a chiropractor for pain in joints of his right hand.

351.   Elite Chiropractic and Applied Rehab did not render any treatment for these areas.

352.   Elite Chiropractic and Applied Rehab billed for purportedly performing treatment relating to R.C. concurrently for ten (10) months, which not only violates the standard of care but is also excessive.

353.   Elite Chiropractic, Applied Rehab, and Huraibi Pain & Rehab Institute submitted claims for payment and accompanying medical records relative to R.C. to Allstate through the U.S. Mail seeking payment for unreasonable and unnecessary treatment, upon which Allstate relied in adjusting the claims.

354.   Allstate is not required to pay Elite Chiropractic, Applied Rehab, and Huraibi Pain & Rehab Institute for the medically unnecessary treatment billed relative to R.C., and is entitled to the return of monies it paid to Elite Chiropractic, Applied Rehab, and Huraibi Pain & Rehab Institute for the medically unnecessary treatment.

### 7.   Patient N.B. (Claim No. FXP-0229599)

355.   Patient N.B. (Claim No. (FXP-0229599) was allegedly involved in a motor vehicle accident on September 9, 2016.

356.   N.B. presented to Elite Chiropractic on November 16, 2016.

357.   Like almost every patient at issue in this Complaint, Salameh's diagnoses for N.B. included (1) sprains/strains in cervical spine, thoracic spine, and

lumbar spine; (2) myofascitis; and (3) subluxations in the cervical spine, thoracic spine, lumbar spine, and pelvis.

358.   Like nearly every patient at issue in this Complaint, Elite Chiropractic initiated a predetermined protocol of chiropractic treatment three (3) times a week.

359.   N.B. presented to Applied Rehab the next day, November 17, 2016, to begin physical therapy, purportedly as a referral from Bachu Abraham, M.D.

360.   Straightway began billing for transportation relating to N.B. on November 17, 2016.

361.   Thereafter, Elite Chiropractic and Applied Rehab initiated N.B. on a protracted course of unnecessary and excessive treatment in violation of established standards of care.

362.   Elite Chiropractic and Applied Rehab billed Allstate for allegedly rendering concurrent chiropractic and physical therapy treatment, which violates the standard of care.

363.   The treatment modalities and frequency remained the same despite monthly evaluations, confirming that the evaluations served no purpose other than to perpetuate unnecessary treatment to be billed to Allstate.

364.   Patient N.B.'s treatment lasted nine (9) months with no improvement.

365.   Elite Chiropractic and Applied Rehab submitted claims for payment and accompanying medical records relative to N.B. to Allstate through the U.S. Mail

seeking payment for unreasonable and unnecessary treatment, upon which Allstate relied in adjusting the claims.

366.   Allstate is not required to pay Elite Chiropractic and Applied Rehab for the medically unnecessary treatment that was billed relative to N.B. and is entitled to the return of monies it paid to Elite Chiropractic and Applied Rehab for the medically unnecessary treatment.

## IX.   FRAUDULENT BILLING PRACTICES

367.   Providers like the defendants have a responsibility to select and submit the billing code that accurately and truthfully identifies the services performed and the complexity involved in rendering those services.

368.   The National Correct Coding Initiative ("NCCI") was established to promote national correct coding methodologies and to control improper coding leading to inappropriate payment.

369.   The NCCI contains an edit table entitled the "Column One/Column Two Correct Coding Edit Table" that identifies billing codes that should not be reported together because the services (and reimbursement) of the Column Two code is subsumed by the services (and reimbursement) for the Column One code.

370.   Violation of the edits (billing a Column One code and a Column Two code on the same day for the same patient) is known as "unbundling," which occurs

when a provider bills separately for individual components of a procedure that are included in another billing code also billed for the same date of service.

371.   Each NCCI edit has a modifier indicator assigned to it.

372.   A modifier indicator of "0" indicates a modifier cannot be used to bypass the edit.

373.   A modifier indicator of "1" indicates that a properly-codified modifier can be used to allow submitted services or procedures if certain criteria are met.

374.   Applied Rehab submitted bills to Allstate seeking payment for CPT Codes paired with other billing codes that have NCCI Modifier Indicator "1" listed in which the required criteria was never met.

375.   For each violation of the Column One and Column Two Edit Table, it is the procedure in Column Two that is unbundled from Column One and therefore is non-compensable.

376.   Applied Rehab submitted bills to Allstate seeking payment for CPT Code 97140 (*"Manual therapy techniques (e.g. mobilization, manipulation, manual lymphatic drainage, manual traction) one or more regions, each 15 minutes"*) and CPT Code 97530 (*"Therapeutic activities, direct (one on one) patient contact by the provider (use of dynamic activities to improve functional performance), each 15 minutes"*) for the same patient on the same date of service.  *See* Exhibit 1.

377. CPT Code 97530 is a Column Two code and CPT Code 97140 is a Column One code when billed on the same date of service for the same patient.

378. Applied Rehab attempted to circumvent this edit by appending modifier 59 to the charges for CPT Code 97530.

379. Modifier 59 is properly used to identify services that are not normally reported together, but are appropriate under certain circumstances provided that documentation is submitted proving that the billing code appended with modifier 59 was for "separate and distinct" treatment.

380. None of the claims submitted by Applied Rehab seeking payment using CPT Code 97530 with modifier 59 affixed met this criterion.

381. Applied Rehab fraudulently unbundled charges using CPT Code 97530 to Allstate totaling thousands of dollars. Id.

382. Applied Rehab also submitted bills to Allstate seeking payment for CPT Code 97110 (*"Therapeutic procedure, one of more areas, 15 minutes; therapeutic exercises to develop strength and endurance, range of motion and flexibility")* and CPT Code 97164 (*"Physical therapy re-evaluation"*) for the same patient on the same date of service.

383. CPT Code 97164 is a Column Two code and CPT Code 97110 is a Column One code when billed on the same date of service for the same patient.

384.   Thus, Applied Rehab fraudulently unbundled charges using CPT Code 97164 totaling thousands of dollars.  Id.

385.   The breadth, depth, and frequency of Applied Rehab's fraudulent billing confirms that these billing practices were intentional.

386.   Allstate is not obligated to pay Applied Rehab for fraudulently billed treatment.

## X.   UNREASONABLE AND EXCESSIVE TRANSPORTATION CHARGES

387.   The transportation charges billed to Allstate by Straightway are unreasonable and excessive.

388.   Michigan courts have stated explicitly that "medical care providers are prohibited from charging more than a reasonable fee."  McGill v. Auto. Ass'n, 207 Mich. App. 402, 405 (1994).

389.   The Michigan No-Fault Act states that only "reasonable charges" constitute allowable expenses thereunder.  Mich. Comp. Laws § 500.3107(1)(a).

390.   Michigan law is clear that the burden of proving the reasonableness of charges submitted for No-Fault benefits lies with the provider and insurers have an obligation to police and challenge unreasonable charges.

391.   For the reasons discussed infra, Straightway cannot meet its burden, thereby vitiating Allstate's obligation to pay any of the unreasonable charges for the alleged transportation services billed by Straightway.

392.   Straightway charged Allstate a $35 pick-up fee, a $35 drop-off fee, and a mileage charge of $2 per mile per passenger, regardless of whether Straightway picked up or dropped off multiple passengers at the same location.

393.   These rates far exceed the amount of a taxicab and vastly surpass the cost to take an application-based ride-hailing service, such as Uber or Lyft.

394.   For example, patients Y.A. (Claim No. 0378562672) and M.A.  (Claim No. 0378562672) each live 3.3 miles away from Core Health, Applied Rehab, and Elite Chiropractic.

395.   Straightway submitted bills to Allstate seeking payment for transportation services purportedly provided to both Y.A. and M.A. at the same time on the same date of service, indicating that it picked up and dropped off both patients at the same locations, on forty-eight (48) dates of service.

396.   Straightway billed Allstate $81.52 per date of service per patient for roundtrip transportation to Core Health, Applied Rehab, and Elite Chiropractic.

397.   Straightway therefore billed Allstate $163.04 per date of service for allegedly transporting Y.A. and M.A. a total of 6.6 miles.

398.   A round-trip taxicab ride for the same distance, including a fifteen percent (15%) tip, costs approximately $21.30, or less than one-seventh the amount charged to Allstate by Straightway.

399.   A round-trip Uber ride for the same distance costs approximately $18.00, or less than one-ninth the amount charged to Allstate by Straightway.

400.   The excessive nature of Straightway's charges are also demonstrated by it billing Allstate $70.40 for purportedly transporting patients less than one city block.

401.   Straightway billed Allstate for transporting R.C. (Claim No. 0466646130) from Elite Chiropractic's location at 13700 Michigan Avenue to Dearborn Pain Specialists, located at 13530 Michigan Avenue on March 17, 2017 and then again on March 27, 2017.

402.   Dearborn Pain Specialists is 0.1 miles from Elite Chiropractic.

403.   Charging $70.40 to transport a patient 0.1 miles is excessive and unreasonable.

404.   A taxicab ride for the same distance, including a fifteen percent (15%) tip, costs approximately $3.00, or less than one-twenty-third the amount charged to Allstate by Straightway.

405.   Straightway charges an excessive rate for transportation services and cannot sustain its burden of proving otherwise.

## XI.  MISREPRESENTATIONS MADE BY THE DEFENDANTS AND RELIED UPON BY ALLSTATE

### A.  MISREPRESENTATIONS BY THE DEFENDANTS

406.  To induce Allstate to pay promptly their fraudulent charges, the defendants submitted and caused to be submitted to Allstate false documentation that materially misrepresented that the services they referred and billed were necessary within the meaning of the Michigan No-Fault Act, that the charges for the same were reasonable, and that all treatment was lawfully and actually rendered.

407.  Claims for medical benefits under Michigan's No-Fault Act can only be made for "reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation."  Mich. Comp. Laws § 500.3107(1)(a).

408.  Moreover, claims for medical benefits under Michigan's No-Fault Act can only be made for services that are "lawfully render[ed]."  Mich. Comp. Laws § 500.3157(1).

409.  Thus, every time the defendants submitted bills and medical records to Allstate supporting their claims for No-Fault benefits, the defendants necessarily warranted that such bills and records related to lawfully and actually rendered and necessary treatment for their patients' care, recovery, or rehabilitation.

410. There are no less than nine (9) separate reasons why the defendants' alleged treatment was not in fact performed, was not lawful, was not medically necessary, and was fraudulently billed to Allstate:

    a.    Applied Rehab, Elite Chiropractic, Core Health, Straightway, Kallil Kazan, Khanafer, Salameh, and Mo Kazan billed Allstate for treatment and services that were not actually provided. Multiple patients at issue in this Complaint denied receiving the treatment or services that these defendants billed.

    b.    The defendants falsified and altered records to justify billing for medically unnecessary services, including physical therapy and medical transportation, and to create the appearance of injuries.

    c.    The defendants offered improper inducements to patients to undergo medically unnecessary treatments, including prescriptions for opioids and promises of disability certificates.

    d.    The defendants billed for treatment that was improperly influenced by factors other than legitimate medical judgment and engaged in *quid pro quo* relationships with each other. The defendants utilized a fictitious entity to purchase motor vehicle accident reports and then used these reports to solicit motor vehicle accident victims for medically unnecessary treatment that these persons did not seek and would not have sought but for the unlawful contact by the defendants. The defendants participated in *quid pro quo* relationships with each other that derived profit for themselves without regard for the necessity and lawfulness of the treatment billed to Allstate.

    e.    Straightway billed Allstate for unlawful transportation services, including alleged services when Straightway did not have the required registration from the State of Michigan.

    f.    The defendants used an unlawful predetermined treatment protocol, implemented by the ordering of excessive physical therapy, disability, chiropractic treatment, medications, and injection therapy. This predetermined protocol is confirmed by

the nearly identical purported findings and treatment plans ordered for patients at issue in this Complaint, which have no relationship to medical necessity or any patient-specific considerations.

g.      Huraibi, Huraibi Pain & Rehab Institute, and HS Management indiscriminately referred patients for physical therapy (to defendants Core Health and Applied Rehab) without any individual determination of medical necessity, and without any evaluation of the efficacy of such treatment. The predetermined nature of these referrals is illustrated by the defendants' purported examination findings, or lack thereof, which frequently ordered physical therapy without reference to whether or not the patient was already attending physical therapy or whether it was effective.

h.      Applied Rehab submitted claims to Allstate using the fraudulent billing practice of unbundling. The prevalence of Applied Rehab's unbundling evidences that it was a regular practice that was knowingly and intentionally done. Unbundling that is done knowingly and intentionally constitutes a fraudulent billing practice.

i.      Straightway submitted charges to Allstate for transportation services that were excessive and grossly unreasonable.

411. As detailed *supra*, the defendants frequently violated established standards of care, treated excessively, and billed for treatment without basis or adequate substantiation.

412. If treatment is not required for a patient's care, recovery, or rehabilitation, such treatment is not medically necessary.

413. The foregoing facts – billing for services not rendered, unlawfully soliciting patients, offering improper inducements, falsifying documents to justify

excessive treatment, using a predetermined treatment protocol to inflate charges, misrepresenting the necessity of procedures performed on submitted bills, and unbundling – were not, and could not have been, known to Allstate until it commenced its investigation of the defendants shortly before the filing of this action.

414.   Taken as a whole, the prevalence of such facts and the defendants' failure to abide by accepted standards of care render the treatment and testing billed by the defendants unnecessary and unlawful.

415.   The fact of violations of medical standards is present with respect to every patient at issue in this Complaint, including those specific patient examples set out above and in the charts annexed hereto at Exhibits 1 through 6.

416.   Thus, each claim for payment (and accompanying medical records) under Michigan's No-Fault Act faxed and mailed to Allstate by, on behalf of, or with the knowledge of the defendants constitutes a misrepresentation because the treatment underlying the claim was not lawful and medically necessary, as it must be in order to be compensable under Michigan law.

417.   Moreover, each Health Insurance Claim Form ("HICF") submitted to Allstate by the defendants contained the following notation: "NOTICE: Any person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties."

418.   Through the submission of patient records, invoices, HICFs, and other medical documentation to Allstate via the interstate wires and the U.S. Mail, the defendants attested to the fact, lawfulness, and medical necessity of the visits, examinations, screenings, testing, procedures, and ancillary services for which they billed Allstate.

419.   As the defendants did not render lawful and reasonably necessary medical treatment and services, and misrepresented the treatment and services purportedly performed, each bill and accompanying documentation faxed or mailed by or on behalf of the defendants to Allstate constitutes a material misrepresentation.

420.   As licensed medical professionals, defendants Kallil Kazan, Khanafer, Salameh, and Huraibi were obligated, legally and ethically, to act honestly, with integrity, and in accordance with their professional oaths and pledges.

421.   Each misrepresentation made by Kallil Kazan, Khanafer, Salameh, and Huraibi was in violation of their legal and ethical obligations as healthcare professionals.

**B.   ALLSTATE'S JUSTIFIABLE RELIANCE**

422.   The facially valid documents submitted to Allstate by the defendants were designed to, and did in fact, induce Allstate to rely on the documents.

423.   At all relevant times, the defendants concealed from Allstate details regarding the fact, lawfulness, and medical necessity of services allegedly provided

and referred by them to prevent Allstate from discovering that the claims submitted by and on behalf of the defendants were not compensable under the No-Fault Act.

424.    These    misrepresentations    include    submitting    false    medical documentation, including HICFs, documenting the fact, lawfulness, and necessity of medical treatment, testing, and services in order to seek payment under Michigan's No-Fault Act.

425.    Evidence of the fraudulent scheme detailed in this Complaint was not discovered until after patterns had emerged and Allstate began to investigate the defendants, revealing the true nature and full scope of their fraudulent scheme.

426.    Due to the defendants' material misrepresentations and other affirmative acts designed to conceal their fraudulent scheme, Allstate did not and could not have discovered that its damages were attributable to fraud until shortly before it filed this Complaint.

427.    In reliance on the defendants' misrepresentations, Allstate paid money to the defendants to its detriment.

428.    Allstate would not have paid these monies had the defendants provided true and accurate information about the fact, lawfulness, and necessity of the referrals and medical services provided.

429.   As a result, Allstate has paid in excess of $1,334,135 to the defendants in reasonable reliance on the false medical documentation and false representations regarding the defendants' eligibility for payment under the Michigan No-Fault Act.

## XII.   MAIL AND WIRE FRAUD RACKETEERING ACTIVITY

430.   As discussed above, the referrals, treatment, and services billed by the defendants were not medically necessary, were unlawful, and were fraudulently billed.

431.   The objective of the scheme to defraud Allstate, which occurred throughout the period noted in Exhibits 1 through 6, was to collect No-Fault benefits to which the defendants were not entitled because the medical services rendered, if at all, were not necessary and were not lawfully rendered, were fraudulently billed, and were billed at excessive and unreasonable amounts.

432.   This objective necessarily required the submission of claims for payment to Allstate.

433.   The defendants created, prepared, and submitted false medical documentation and placed in a post office and authorized depository for mail matter things to be sent and delivered by the United States Postal Service or sent through faxes over interstate wires.

434.   All documents, medical records, notes, reports, HICFs, medical diagnoses, letters, correspondence, and requests for payment in connection with the

insurance claims referenced throughout this pleading traveled through interstate wires or the U.S. Mail.

435.   All medical records and bills submitted through interstate wires by the defendants were faxed from the defendants in Michigan to Allstate in Iowa.

436.   Allstate received all medical records and bills faxed to it by the defendants in Iowa.

437.   Every automobile insurance claim detailed herein involved at least one (1) use of the U.S. Mail, including the mailing of, among other things, the notice of claim, initial policies, insurance payments, benefits payment checks, and the return of the cancelled check drafts to the financial institution(s) from which the draft(s) were drawn, as well as the return of check drafts to Allstate.

438.   It was foreseeable to the defendants that faxing bills and medical records to Allstate would trigger mailings in furtherance of the scheme to defraud, including actual payment of fraudulent bills via checks mailed by Allstate.

439.   Every payment at issue in this Complaint where Allstate was induced to rely on the defendants' false medical records and bills was tendered via a check mailed by Allstate using the U.S. Mail.

440.   The fraudulent medical billing scheme detailed herein generated thousands of mailings and faxes.

441.   A chart highlighting representative examples of mail and wire fraud arising from the defendants' patient/business files is annexed hereto at Exhibit 7.

442.   As detailed herein, the defendants also submitted, caused to be submitted, or knew medical documentation and claims for payment would be submitted to Allstate via interstate wires or the U.S. Mail related to each exemplar patient discussed in this Complaint.

443.   It was within the ordinary course of business for the Defendant Entities to submit claims for No-Fault payments to insurance carriers like Allstate through interstate wires and the U.S. Mail.

444.   Moreover, the business of providing medical services by each of the Defendant Entities at issue herein is regularly conducted by fraudulently seeking payment to which each Defendant Entity is not entitled through the use of fraudulent communications sent via faxes and the U.S. Mail.

445.   In other words, discrete (claim- and patient-specific) instances of mail and wire fraud are a regular way of doing business for each of the Defendant Entities.

446.   The Defendant Entities, at the direction and with the knowledge of their owners and managers (the individual defendants), continue to submit claims for payment to Allstate and, in some instances, continue to litigate against Allstate seeking to collect on unpaid claims.

447.   Thus, the defendants' commission of mail and wire fraud continues.

448.   As all of the defendants named herein agreed that they would use (and, in fact, did use) the mail in furtherance of their scheme to defraud Allstate by seeking payment for services that are not compensable under the Michigan No-Fault Act, these defendants committed mail fraud, as defined in 18 U.S.C. § 1341.

449.   As several of the defendants named herein agreed that they would use (and, in fact, did use) faxes over interstate wires in furtherance of their scheme to defraud Allstate by seeking payment for services that are not compensable under the Michigan No-Fault Act, these defendants committed wire fraud, as defined in 18 U.S.C. § 1343.

450.   Allstate reasonably relied on the submissions it received from the Defendant Entities, including the representative submissions set out in Exhibit 7 annexed hereto and identified in the exemplar claims above.

451.   As the defendants agreed to pursue the same criminal objective (namely, mail and wire fraud), they committed a conspiracy within the meaning of the RICO Act, 18 U.S.C. § 1962(d), and are therefore jointly and severally liable for Allstate's damages.

## XIII.  DAMAGES

452.   The pattern of fraudulent conduct by the defendants injured Allstate in its business and property by reason of the aforesaid violations of law.

453.   Although it is not necessary for Allstate to calculate damages with specificity at this stage in the litigation, and Allstate's damages continue to accrue, Allstate's injury includes, but is not limited to, compensatory damages in excess of $1,334,135.

454.   Exhibits 8 through 13 annexed hereto and incorporated herein as if fully set forth in their entirety, identify monies paid by Allstate to the defendants by date, payor, patient claim number, check number, and amount.

455.   Exhibit 8 details payments made by Allstate to Applied Rehab.

456.   Exhibit 9 details payments made by Allstate to Elite Chiropractic.

457.   Exhibit 10 details payments made by Allstate to Core Health.

458.   Exhibit 11 details payments made by Allstate to Straightway.

459.   Exhibit 12 details payments made by Allstate to Huraibi Pain & Rehab Institute.

460.   Exhibit 13 details payments made by Allstate to HS Management.

461.   Every claim identified in Exhibits 8 through 13 derives from an Allstate insurance policy.

462.   Allstate's claim for compensatory damages, as set out in Exhibits 8 through 13, does not include payment made with respect to any Assigned Claim Facility/Michigan Automobile Insurance Placement Facility claimant.

463.   Every payment identified in Exhibits 8 through 13 was made by Allstate alone and Allstate has not been reimbursed for any of the payments itemized in Exhibits 8 through 13.

464.   Moreover, every payment identified in Exhibits 8 through 13 derives from a check sent by Allstate to the defendants through the U.S. Mail.

465.   As such, the defendants knew that the U.S. Mail would be used as part of their scheme to defraud as the defendants only faxed and mailed medical records and bills for the purpose of having Allstate rely on such documents and mail payment in response thereto.

466.   Allstate also seeks damages, in an amount to be determined at trial, related to the cost of claims handling/adjustment for claims mailed and faxed by the defendants, which includes the cost of investigation to uncover the fraudulent nature of the claims submitted by the defendants.

467.   Allstate investigated each of the defendants both individually and in connection with the comprehensive scheme detailed herein and incurred investigative and claims handling expenses with respect to each defendant.

## XIV.  **CAUSES OF ACTION**

### COUNT I
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### (Applied Rehab Enterprise)
### Against Elite Chiropractic Center, P.C., Straightway Transportation LLC, Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute, HS Management LLC, Kallil Kazan, D.C., Naim Khanafer, D.C., Naiel Salameh, D.C., Mohamad Kazan, and Hussein Huraibi, M.D.

468.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 467 set forth above as if fully set forth herein.

469.   Applied Rehab constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

470.   In connection with each of the claims identified in the within Complaint, Elite Chiropractic, Straightway, Huraibi Pain & Rehab Institute, HS Management, Kallil Kazan, Khanafer, Salameh, Mo Kazan, and Huraibi ("Count I defendants") intentionally caused to be prepared, faxed, and mailed false medical documentation by Applied Rehab, or knew that such false medical documentation would be faxed and mailed in the ordinary course of Applied Rehab's business, or should have reasonably foreseen that the faxing and mailing of such false medical documentation by Applied Rehab would occur, in furtherance of the Count I defendants' scheme to defraud.

471.   The Count I defendants employed, knew, or should have foreseen that, two (2) or more faxes and mailings would be sent to demand and receive payment

from Allstate on certain dates, including, but not limited to, those dates identified in the chart annexed hereto at Exhibit 7.

472.   Among other things, medical records, bills, invoices, applications for insurance, applications for benefits, and premium checks were delivered to Allstate through the U.S. Mail and/or interstate wires.

473.   Policies of insurance were delivered to insureds through the U.S. Mail.

474.   Payments to Applied Rehab from Allstate were transmitted through the U.S. Mail.

475.   As documented above, the Count I defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Allstate for medical services that were purportedly performed by Applied Rehab, which they knew would be billed by Applied Rehab, in order to collect payment from Allstate under the personal injury protection benefits portion of the Allstate policies and applicable provisions of the Michigan No-Fault Act.

476.   Kallil Kazan, Khanafer, and Salameh owned and managed Applied Rehab and were responsible for all actions taken by Applied Rehab and its representatives.

477.   Kallil Kazan, Khanafer, and Salameh rendered and facilitated the excessive and medically unnecessary physical therapy treatment, when treatment was in fact rendered, billed by Applied Rehab.

478.   Elite Chiropractic and Salameh billed Allstate for excessive and medically unnecessary chiropractic treatment, if provided at all, that created the appearance of injury and permitted Applied Rehab to continue billing for excessive and medically unnecessary physical therapy.

479.   Huraibi Pain & Rehab Institute, HS Management, and Huraibi provided the medically unnecessary disability certificates and physical therapy prescriptions that incentivized patients to keep returning and permitted Applied Rehab to continue billing for excessive and medically unnecessary physical therapy.

480.   Straightway and Mo Kazan billed Allstate for allegedly transporting patients to Applied Rehab, thereby ensuring that Applied Rehab could continue to bill Allstate for excessive and medically unnecessary physical therapy.

481.   As a result of, and in reasonable reliance on, these misleading documents and representations, Allstate, by its agents and employees, issued drafts to Applied Rehab for the benefit of the Count I defendants that would not otherwise have been paid.

482.   The Count I defendants' pattern of submitting, causing to be submitted, or knowing that fraudulent claims that appeared legitimate on their face would be submitted prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling the Count I defendants to continue their fraudulent scheme without detection.

483.    By faxing and mailing, or agreeing that the interstate wires or the mails would be used to submit, numerous fraudulent claims in an ongoing scheme, the Count I defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

484.    The activities alleged in this Complaint had the direct effect of causing funds to be transferred from Allstate to Applied Rehab for the benefit of the Count I defendants.

485.    The Count I defendants participated in the conduct of this enterprise through a pattern of racketeering activities.

486.    Allstate is a "person," as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count I defendants' fraudulent acts.

487.    The Count I defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

488.    Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of Michigan.

489.    Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

490.    By virtue of the Count I defendants' violation of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason

of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT II
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### (Applied Rehab Enterprise)
### Against Elite Chiropractic Center, P.C., Straightway Transportation LLC, Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute, HS Management LLC, Kallil Kazan, D.C., Naim Khanafer, D.C., Naiel Salameh, D.C., Mohamad Kazan, and Hussein Huraibi, M.D.

491.    Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 467 set forth above as if fully set forth herein.

492.    Defendants Elite Chiropractic, Straightway, Huraibi Pain & Rehab Institute, HS Management, Kallil Kazan, Khanafer, Salameh, Mo Kazan, and Huraibi ("Count II defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of Applied Rehab.

493.    The Count II defendants each agreed to further, facilitate, support, and operate the Applied Rehab enterprise.

494.    As such, the Count II defendants conspired to violate 18 U.S.C. § 1962(c).

495.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Applied Rehab even though Applied Rehab was not eligible to collect No-Fault payments by virtue of its unlawful conduct.

496.   The Count II defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to Allstate of insurance claim and medical record documents containing material misrepresentations.

497.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count II defendants' unlawful conduct described herein.

498.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count II defendants are jointly and severally liable to Allstate and Allstate is entitled to recover from each three times the damages sustained by reason of the claims submitted by or on behalf of the Count II defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT III
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### (Elite Chiropractic Enterprise)
### Against Applied Rehab & Physical Therapy LLC d/b/a Applied Rehab, Straightway Transportation LLC, Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute, HS Management LLC, Kallil Kazan, D.C., Naim Khanafer, D.C., Naiel Salameh, D.C., Mohamad Kazan, and Hussein Huraibi, M.D.

499.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 467 set forth above as if fully set forth herein.

500.   Elite Chiropractic constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

501.   In connection with each of the claims identified in the within Complaint, Applied Rehab, Straightway, Huraibi Pain & Rehab Institute, HS Management, Kallil Kazan, Khanafer, Salameh, Mo Kazan, and Huraibi ("Count III defendants") intentionally caused to be prepared, faxed, and mailed false medical documentation by Elite Chiropractic, or knew that such false medical documentation would be faxed and mailed in the ordinary course of Elite Chiropractic's business, or should have reasonably foreseen that the faxing and mailing of such false medical documentation by Elite Chiropractic would occur, in furtherance of the Count III defendants' scheme to defraud.

502.   The Count III defendants employed, knew, or should have foreseen that two (2) or more faxes and mailings would be sent to demand and receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart annexed hereto at Exhibit 7.

503.   Among other things, medical records, bills, invoices, applications for insurance, applications for benefits, and premium checks were delivered to Allstate through the U.S. Mail and/or interstate wires.

504.   Policies of insurance were delivered to insureds through the U.S. Mail.

505.   Payments to Elite Chiropractic from Allstate were transmitted through the U.S. Mail.

506.   As documented above, the Count III defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Allstate for medical services that were purportedly performed by Elite Chiropractic, which they knew would be billed by Elite Chiropractic, in order to collect payment from Allstate under the personal injury protection benefits portion of the Allstate policies and applicable provisions of the Michigan No-Fault Act.

507.   Kallil Kazan and Salameh owned and managed Elite Chiropractic and were responsible for all actions taken by Elite Chiropractic and its employees.

508.   Applied Rehab, Kallil Kazan, Khanafer, and Salameh billed Allstate for excessive and medically unnecessary physical therapy treatment, if provided at all, that created the appearance of injury and permitted Elite Chiropractic to continue billing for unlawful, excessive, and medically unnecessary chiropractic treatment.

509.   Huraibi Pain & Rehab Institute, HS Management, and their owner, Huraibi, provided the medically unnecessary disability certificates and treatment prescriptions that incentivized patients to keep returning and gave the appearance of injury, which permitted Elite Chiropractic to continue billing for excessive and medically unnecessary services.

510.   Straightway and Mo Kazan billed Allstate for allegedly transporting patients to Elite Chiropractic, thereby ensuring that Elite Chiropractic could continue to bill Allstate for excessive and medically unnecessary services.

511.   As a result of, and in reasonable reliance on, these misleading documents and representations, Allstate, by its agents and employees, issued drafts to Elite Chiropractic for the benefit of the Count III defendants that would not otherwise have been paid.

512.   The Count III defendants' pattern of submitting, causing to be submitted, or knowing that fraudulent claims that appeared legitimate on their face would be submitted prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling the Count III defendants to continue their fraudulent scheme without detection.

513.   By faxing and mailing, or agreeing that the interstate wires or the mails would be used to submit, numerous fraudulent claims in an ongoing scheme, the Count III defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c)

514.   The activities alleged in this Complaint had the direct effect of causing funds to be transferred from Allstate to Elite Chiropractic for the benefit of the Count III defendants.

515.   The Count III defendants participated in the conduct of this enterprise through a pattern of racketeering activities.

516.   Allstate is a "person," as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count III defendants' fraudulent acts.

517.   The Count III defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

518.   Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of Michigan.

519.   Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

520.   By virtue of the Count III defendants' violation of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT IV
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### (Elite Chiropractic Enterprise)
### Against Applied Rehab & Physical Therapy LLC d/b/a Applied Rehab, Straightway Transportation LLC, Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute, HS Management LLC, Kallil Kazan, D.C., Naim Khanafer, D.C., Naiel Salameh, D.C., Mohamad Kazan, and Hussein Huraibi, M.D.

521.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 467 set forth above as if fully set forth herein.

522.   Defendants Applied Rehab, Straightway, Huraibi Pain & Rehab Institute, HS Management, Kallil Kazan, Khanafer, Salameh, Mo Kazan, and

Huraibi ("Count IV defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of Elite Chiropractic.

523.   The Count IV defendants each agreed to further, facilitate, support, and operate the Elite Chiropractic enterprise.

524.   As such, the Count IV defendants conspired to violate 18 U.S.C. § 1962(c).

525.   The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Elite Chiropractic even though Elite Chiropractic was not eligible to collect No-Fault payments by virtue of its unlawful conduct.

526.   The Count IV defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to Allstate of insurance claim and medical record documents containing material misrepresentations.

527.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count IV defendants' unlawful conduct described herein.

528.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count IV defendants are jointly and severally liable to Allstate and Allstate is entitled to recover from each three times the damages sustained by reason of the claims

submitted by or on behalf of the Count IV defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT V
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### (Core Health Enterprise)
### Against Straightway Transportation LLC, Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute, HS Management LLC, Kallil Kazan, D.C., Naim Khanafer, D.C., Naiel Salameh, D.C., Mohamad Kazan, and Hussein Huraibi, M.D.

529.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 467 set forth above as if fully set forth herein.

530.   Core Health constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

531.   In connection with each of the claims identified in the within Complaint, Straightway, Huraibi Pain & Rehab Institute, HS Management, Kallil Kazan, Khanafer, Salameh, Mo Kazan, and Huraibi ("Count V defendants") intentionally caused to be prepared, faxed, and mailed false medical documentation by Core Health, or knew that such false medical documentation would be faxed and mailed in the ordinary course of Core Health's business, or should have reasonably foreseen that the faxing and mailing of such false medical documentation by Core Health would occur, in furtherance of the Count V defendants' scheme to defraud.

532.   The Count V defendants employed, knew, or should have foreseen that two (2) or more faxes and mailings would be sent to demand and receive payment

from Allstate on certain dates, including, but not limited to, those dates identified in the chart annexed hereto at Exhibit 7.

533.    Among other things, medical records, bills, invoices, applications for insurance, applications for benefits, and premium checks were delivered to Allstate through the U.S. Mail and/or interstate wires.

534.    Policies of insurance were delivered to insureds through the U.S. Mail.

535.    Payments to Core Health from Allstate were transmitted through the U.S. Mail.

536.    As documented above, the Count V defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Allstate for medical services that were purportedly performed by Core Health, which they knew would be billed by Core Health, in order to collect payment from Allstate under the personal injury protection benefits portion of the Allstate policies and applicable provisions of the Michigan No-Fault Act.

537.    Khanafer owned and managed Core Health and was responsible for all actions taken by Core Health and its representatives.

538.    Kallil Kazan, Khanafer, and Salameh rendered and facilitated unlawful and medically unnecessary treatment, when treatment was in fact rendered, that was billed to Allstate by Core Health.

539.   Huraibi Pain & Rehab Institute, HS Management, and Huraibi provided the medically unnecessary disability certificates and prescriptions that incentivized patients to keep returning and that created the appearance of injury and permitted Core Health to continue billing for unlawful and medically unnecessary treatment.

540.   Straightway and Mo Kazan billed Allstate for allegedly transporting patients to Core Health, thereby ensuring that Core Health could continue to bill Allstate.

541.   As a result of, and in reasonable reliance on, these misleading documents and representations, Allstate, by its agents and employees, issued drafts to Core Health for the benefit of the Count V defendants that would not otherwise have been paid.

542.   The Count V defendants' pattern of submitting, causing to be submitted, or knowing that fraudulent claims that appeared legitimate on their face would be submitted prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling the Count V defendants to continue their fraudulent scheme without detection.

543.   By faxing and mailing, or agreeing that the interstate wires or the mails would be used to submit, numerous fraudulent claims in an ongoing scheme, the Count V defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

544. The activities alleged in this Complaint had the direct effect of causing funds to be transferred from Allstate to Core Health for the benefit of the Count V defendants.

545. The Count V defendants participated in the conduct of this enterprise through a pattern of racketeering activities.

546. Allstate is a "person," as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count V defendants' fraudulent acts.

547. The Count V defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

548. Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of Michigan.

549. Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

550. By virtue of the Count V defendants' violation of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT VI
## VIOLATIONS OF 18 U.S.C. § 1962(d)
### (Core Health Enterprise)
**Against Straightway Transportation LLC, Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute, HS Management LLC, Kallil Kazan, D.C., Naim Khanafer, D.C., Naiel Salameh, D.C., Mohamad Kazan, and Hussein Huraibi, M.D.**

551.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 467 set forth above as if fully set forth herein.

552.   Defendants Straightway, Huraibi Pain & Rehab Institute, HS Management, Kallil Kazan, Khanafer, Salameh, Mo Kazan, and Huraibi ("Count VI defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of Core Health.

553.   The Count VI defendants each agreed to further, facilitate, support, and operate the Core Health enterprise.

554.   As such, the Count VI defendants conspired to violate 18 U.S.C. § 1962(c).

555.   The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Core Health even though Core Health was not eligible to collect No-Fault payments by virtue of its unlawful conduct.

556.   The Count VI defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to

Allstate of insurance claim and medical record documents containing material misrepresentations.

557.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count VI defendants' unlawful conduct described herein.

558.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count VI defendants are jointly and severally liable to Allstate and Allstate is entitled to recover from each three times the damages sustained by reason of the claims submitted by or on behalf of the Count VI defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT VII
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### (Straightway Transportation Enterprise)
**Against Applied Rehab & Physical Therapy LLC d/b/a Applied Rehab, Core Health PLLC, Elite Chiropractic Center, P.C., Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute, HS Management LLC, Kallil Kazan, D.C., Naim Khanafer, D.C., Naiel Salameh, D.C., Mohamad Kazan, and Hussein Huraibi, M.D.**

559.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 467 set forth above as if fully set forth herein.

560.   Straightway constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

561.   In connection with each of the claims identified in the within Complaint, Applied Rehab, Core Health, Elite Chiropractic, Huraibi Pain & Rehab

Institute, HS Management, Kallil Kazan, Khanafer, Salameh, Mo Kazan, and Huraibi ("Count VII defendants") intentionally caused to be prepared, faxed, and mailed false documentation by Straightway, or knew that such false medical documentation would be faxed and mailed in the ordinary course of Straightway's business, or should have reasonably foreseen that the faxing and mailing of such false medical documentation by Straightway would occur, in furtherance of the Count VII defendants' scheme to defraud.

562.   The Count VII defendants employed, knew, or should have foreseen that two (2) or more faxes and mailings would be sent to demand and receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart annexed hereto at Exhibit 7.

563.   Among other things, medical records, bills, invoices, applications for insurance, applications for benefits, and premium checks were delivered to Allstate through the U.S. Mail and/or interstate wires.

564.   Policies of insurance were delivered to insureds through the U.S. Mail.

565.   Payments to Straightway from Allstate were transmitted through the U.S. Mail.

566.   As documented above, the Count VII defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Allstate for medical transportation services that were purportedly

provided by Straightway, which they knew would be billed by Straightway, in order to collect payment from Allstate under the personal injury protection benefits portion of the Allstate policies and applicable provisions of the Michigan No-Fault Act.

567.   Mo Kazan owned and managed Straightway and was responsible for all actions taken by Straightway and its drivers.

568.   Huraibi Pain & Rehab Institute, HS Management, and Huraibi billed Allstate for office visits where patients were issued medically unnecessary disability certificates for non-emergency medical transportation services that were billed to Allstate by Straightway.

569.   Applied Rehab, Elite Chiropractic, Core Health, Kallil Kazan, Khanafer, and Salameh used Straightway to coerce patients to appear at their clinics and permitted Straightway to bill Allstate for the medically unnecessary and unlawful transportation to and from their clinics.

570.   As a result of, and in reasonable reliance on, these misleading documents and representations, Allstate, by its agents and employees, issued drafts to Straightway for the benefit of the Count VII defendants that would not otherwise have been paid.

571.   The Count VII defendants' pattern of submitting, causing to be submitted, or knowing that fraudulent claims that appeared legitimate on their face would be submitted prevented Allstate from discovering the fraudulent scheme for

a long period of time, thus enabling the Count VII defendants to continue their fraudulent scheme without detection.

572.   By faxing and mailing, or agreeing that the interstate wires or the mails would be used to submit, numerous fraudulent claims in an ongoing scheme, the Count VII defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

573.   The activities alleged in this Complaint had the direct effect of causing funds to be transferred from Allstate to Straightway for the benefit of the Count VII defendants.

574.   The Count VII defendants participated in the conduct of this enterprise through a pattern of racketeering activities.

575.   Allstate is a "person," as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count VII defendants' fraudulent acts.

576.   The Count VII defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

577.   Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of Michigan.

578.   Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

579.   By virtue of the Count VII defendants' violation of 18 U.S.C. § 1962(c),

Allstate is entitled to recover from them three times the damages sustained by reason

of the claims submitted, caused to be submitted, or known to be submitted by them,

and others acting in concert with them, together with the costs of suit, including

reasonable attorney's fees.

## COUNT VIII
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### (Straightway Transportation Enterprise)
### Against Applied Rehab & Physical Therapy LLC d/b/a Applied Rehab, Core Health PLLC, Elite Chiropractic Center, P.C., Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute, HS Management LLC, Kallil Kazan, D.C., Naim Khanafer, D.C., Naiel Salameh, D.C., Mohamad Kazan, and Hussein Huraibi, M.D.

580.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs

1 through 467 set forth above as if fully set forth herein.

581.   Defendants Applied Rehab, Core Health, Elite Chiropractic, Huraibi

Pain & Rehab Institute, HS Management, Kallil Kazan, Khanafer, Salameh, Mo

Kazan, and Huraibi ("Count VIII defendants") conspired with each other to violate

18 U.S.C. § 1962(c) through the facilitation of the operation of Straightway.

582.   The Count VIII defendants each agreed to further, facilitate, support,

and operate the Straightway enterprise.

583.   As such, the Count VIII defendants conspired to violate 18 U.S.C. §

1962(c).

584.   The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Straightway even though Straightway was not eligible to collect No-Fault payments by virtue of its unlawful conduct.

585.   The Count VIII defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to Allstate of insurance claim and medical record documents containing material misrepresentations.

586.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count VIII defendants' unlawful conduct described herein.

587.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count VIII defendants are jointly and severally liable to Allstate and Allstate is entitled to recover from each three times the damages sustained by reason of the claims submitted by or on behalf of the Count VIII defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT IX
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### (Huraibi Pain & Rehab Institute Enterprise)
### Against Applied Rehab & Physical Therapy LLC d/b/a Applied Rehab, Core Health PLLC, Elite Chiropractic Center, P.C., Straightway Transportation LLC, HS Management LLC, Kallil Kazan, D.C., Naim Khanafer, D.C., Naiel Salameh, D.C., Mohamad Kazan, and Hussein Huraibi, M.D.

588.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 467 set forth above as if fully set forth herein.

589.   Huraibi Pain & Rehab Institute constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

590.   In connection with each of the claims identified in the within Complaint, Applied Rehab, Core Health, Elite Chiropractic, Straightway, HS Management, Kallil Kazan, Khanafer, Salameh, Mo Kazan, and Huraibi ("Count IX defendants") intentionally caused to be prepared, faxed, and mailed false medical documentation by Huraibi Pain & Rehab Institute, or knew that such false medical documentation would be faxed and mailed in the ordinary course of Huraibi Pain & Rehab Institute's business, or should have reasonably foreseen that the faxing and mailing of such false medical documentation by Huraibi Pain & Rehab Institute would occur, in furtherance of the Count IX defendants' scheme to defraud.

591.   The Count IX defendants employed, knew, or should have foreseen that two (2) or more faxes and mailings would be sent to demand and receive payment

from Allstate on certain dates, including, but not limited to, those dates identified in the chart annexed hereto at Exhibit 7.

592.   Among other things, medical records, bills, invoices, applications for insurance, applications for benefits, and premium checks were delivered to Allstate through the U.S. Mail and/or interstate wires.

593.   Policies of insurance were delivered to insureds through the U.S. Mail.

594.   Payments to Huraibi Pain & Rehab Institute from Allstate were transmitted through the U.S. Mail.

595.   As documented above, the Count IX defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Allstate for medical services that were purportedly performed by Huraibi Pain & Rehab Institute, which they knew would be billed by Huraibi Pain & Rehab Institute, in order to collect payment from Allstate under the personal injury protection benefits portion of the Allstate policies and applicable provisions of the Michigan No-Fault Act.

596.   Huraibi owned and managed Huraibi Pain & Rehab Institute and was responsible for all actions taken by Huraibi Pain & Rehab Institute and its representatives.

597.    Huraibi rendered and facilitated unlawful and medically unnecessary treatment, when treatment was in fact rendered, billed by Huraibi Pain & Rehab Institute.

598.    Huraibi owned and managed Huraibi Pain & Rehab Institute and was responsible for all actions taken by Huraibi Pain & Rehab Institute and its representatives.

599.    Applied Rehab, Elite Chiropractic, Core Health, Kallil Kazan, Khanafer, and Salameh billed Allstate for unlawful, excessive, and medically unnecessary treatment, if provided at all, that created the appearance of injury and routinely sent their patients to Huraibi Pain & Rehab Institute in order to receive (unnecessary) prescriptions and certificates, which also allowed Huraibi Pain & Rehab Institute to continue billing for unlawful and medically unnecessary treatment.

600.    Straightway and Mo Kazan allegedly transported patients to Huraibi Pain & Rehab Institute, thereby ensuring that Huraibi Pain & Rehab Institute could continue to bill Allstate.

601.    HS Management and Huraibi billed Allstate for office visits where patients were issued medically unnecessary disability certificates and physical therapy prescriptions, injections, procedures, and various other treatment, if provided at all, that created the appearance of injury and permitted Huraibi Pain &

Rehab Institute to continue billing for unlawful and medically unnecessary treatment.

602.   As a result of, and in reasonable reliance on, these misleading documents and representations, Allstate, by its agents and employees, issued drafts to Huraibi Pain & Rehab Institute for the benefit of the Count IX defendants that would not otherwise have been paid.

603.   The Count IX defendants' pattern of submitting, causing to be submitted, or knowing that fraudulent claims that appeared legitimate on their face would be submitted prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling the Count IX defendants to continue their fraudulent scheme without detection.

604.   By faxing and mailing, or agreeing that the interstate wires or the mails would be used to submit, numerous fraudulent claims in an ongoing scheme, the Count IX defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

605.   The activities alleged in this Complaint had the direct effect of causing funds to be transferred from Allstate to Huraibi Pain & Rehab Institute for the benefit of the Count IX defendants.

606.   The Count IX defendants participated in the conduct of this enterprise through a pattern of racketeering activities.

607.   Allstate is a "person," as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count IX defendants' fraudulent acts.

608.   The Count IX defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

609.   Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of Michigan.

610.   Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

611.   By virtue of the Count IX defendants' violation of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT X
### VIOLATIONS OF 18 U.S.C. § 1962(d)
#### (Huraibi Pain & Rehab Institute Enterprise)
**Against Applied Rehab & Physical Therapy LLC d/b/a Applied Rehab, Core Health PLLC, Elite Chiropractic Center, P.C., Straightway Transportation LLC, HS Management LLC, Kallil Kazan, D.C., Naim Khanafer, D.C., Naiel Salameh, D.C., Mohamad Kazan, and Hussein Huraibi, M.D.**

612.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 467 set forth above as if fully set forth herein.

613.    Defendants Applied Rehab, Core Health, Elite Chiropractic, Straightway, HS Management, Kallil Kazan, Khanafer, Salameh, Mo Kazan, and Huraibi ("Count X defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of Huraibi Pain & Rehab Institute.

614.    The Count X defendants each agreed to further, facilitate, support, and operate the Huraibi Pain & Rehab Institute enterprise.

615.    As such, the Count X defendants conspired to violate 18 U.S.C. § 1962(c).

616.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Huraibi Pain & Rehab Institute even though Huraibi Pain & Rehab Institute was not eligible to collect No-Fault payments by virtue of its unlawful conduct.

617.    The Count X defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to Allstate of insurance claim and medical record documents containing material misrepresentations.

618.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count X defendants' unlawful conduct described herein.

619.  By virtue of this violation of 18 U.S.C. § 1962(d), the Count X defendants are jointly and severally liable to Allstate and Allstate is entitled to recover from each three times the damages sustained by reason of the claims submitted by or on behalf of the Count X defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT XI
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### (HS Management Enterprise)
**Against Applied Rehab & Physical Therapy LLC d/b/a Applied Rehab, Core Health PLLC, Elite Chiropractic Center, P.C., Straightway Transportation LLC, Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute, Kallil Kazan, D.C., Naim Khanafer, D.C., Naiel Salameh, D.C., Mohamad Kazan, and Hussein Huraibi, M.D.**

620.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 467 set forth above as if fully set forth herein.

621.   HS Management constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

622.   In connection with each of the claims identified in the within Complaint, Applied Rehab, Core Health, Elite Chiropractic, Straightway, Huraibi Pain & Rehab Institute, Kallil Kazan, Khanafer, Salameh, Mo Kazan, and Huraibi ("Count XI defendants") intentionally caused to be prepared, faxed, and mailed false medical documentation by HS Management, or knew that such false medical documentation would be faxed and mailed in the ordinary course of HS Management's business, or should have reasonably foreseen that the faxing and

mailing of such false medical documentation by HS Management would occur, in furtherance of the Count XI defendants' scheme to defraud.

623.   The Count XI defendants employed, knew, or should have foreseen that two (2) or more faxes and mailings would be sent to demand and receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart annexed hereto at Exhibit 7.

624.   Among other things, medical records, bills, invoices, applications for insurance, applications for benefits, and premium checks were delivered to Allstate through the U.S. Mail and/or interstate wires.

625.   Policies of insurance were delivered to insureds through the U.S. Mail.

626.   Payments to HS Management from Allstate were transmitted through the U.S. Mail.

627.   As documented above, the Count XI defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Allstate for medical services that were purportedly performed by HS Management, which they knew would be billed by HS Management, in order to collect payment from Allstate under the personal injury protection benefits portion of the Allstate policies and applicable provisions of the Michigan No-Fault Act.

628.   Huraibi owned and managed HS Management and was responsible for all actions taken by HS Management and its representatives.

629.   Huraibi rendered and facilitated unlawful and medically unnecessary treatment, when treatment was in fact rendered, billed by HS Management.

630.   Applied Rehab, Elite Chiropractic, Core Health, Kallil Kazan, Khanafer, and Salameh billed Allstate for unlawful, excessive, and medically unnecessary treatment, if provided at all, that created the appearance of injury and routinely sent their patients to HS Management in order to receive (unnecessary) prescriptions and certificates, which also allowed HS Management to continue billing for unlawful and medically unnecessary treatment.

631.   Straightway and Mo Kazan allegedly transported patients to HS Management, thereby ensuring that HS Management could continue to bill Allstate.

632.   Huraibi Pain & Rehab Institute and Huraibi billed Allstate for office visits where patients were issued medically unnecessary disability certificates and physical therapy prescriptions, injections, procedures, and various other treatment, if provided at all, that created the appearance of injury and permitted HS Management to continue billing for unlawful and medically unnecessary treatment.

633.   As a result of, and in reasonable reliance on, these misleading documents and representations, Allstate, by its agents and employees, issued drafts to HS Management for the benefit of the Count XI defendants that would not otherwise have been paid.

634. The Count XI defendants' pattern of submitting, causing to be submitted, or knowing that fraudulent claims that appeared legitimate on their face would be submitted prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling the Count XI defendants to continue their fraudulent scheme without detection.

635. By faxing and mailing, or agreeing that the interstate wires or the mails would be used to submit, numerous fraudulent claims in an ongoing scheme, the Count XI defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

636. The activities alleged in this Complaint had the direct effect of causing funds to be transferred from Allstate to HS Management for the benefit of the Count XI defendants.

637. The Count XI defendants participated in the conduct of this enterprise through a pattern of racketeering activities.

638. Allstate is a "person," as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XI defendants' fraudulent acts.

639. The Count XI defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

640. Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of Michigan.

641.    Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

642.    By virtue of the Count XI defendants' violation of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XII**
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**(HS Management Enterprise)**
**Against Applied Rehab & Physical Therapy LLC d/b/a Applied Rehab, Core Health PLLC, Elite Chiropractic Center, P.C., Straightway Transportation LLC, Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute, Kallil Kazan, D.C., Naim Khanafer, D.C., Naiel Salameh, D.C., Mohamad Kazan, and Hussein Huraibi, M.D.**

643.    Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 467 set forth above as if fully set forth herein.

644.    Defendants Applied Rehab, Core Health, Elite Chiropractic, Straightway, Huraibi Pain & Rehab Institute, Kallil Kazan, Khanafer, Salameh, Mo Kazan, and Huraibi ("Count XII defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of HS Management.

645.    The Count XII defendants each agreed to further, facilitate, support, and operate the HS Management enterprise.

646.   As such, the Count XII defendants conspired to violate 18 U.S.C. § 1962(c).

647.   The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of HS Management even though HS Management was not eligible to collect No-Fault payments by virtue of its unlawful conduct.

648.   The Count XII defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to Allstate of insurance claim and medical record documents containing material misrepresentations.

649.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count XII defendants' unlawful conduct described herein.

650.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count XII defendants are jointly and severally liable to Allstate and Allstate is entitled to recover from each three times the damages sustained by reason of the claims submitted by or on behalf of the Count XII defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XIII
## COMMON LAW FRAUD
### Against All Defendants

651. Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 467 set forth above as if fully set forth herein.

652. The scheme to defraud perpetrated by Applied Rehab, Elite Chiropractic, Core Health, Straightway, Huraibi Pain & Rehab Institute, HS Management, Kallil Kazan, Khanafer, Salameh, Mo Kazan, and Huraibi ("Count XIII defendants") was dependent upon a succession of material misrepresentations of fact that the defendants were lawfully and actually providing necessary services in compliance with the Michigan No-Fault Act and were entitled to collect benefits thereunder.

653. The misrepresentations of fact made by the Count XIII defendants include, but are not limited to, those material misrepresentations discussed in section XI *supra*.

654. The Count XIII defendants' representations were false or required disclosure of additional facts to render the information furnished not misleading.

655. The misrepresentations were intentionally made by the Count XIII defendants in furtherance of their scheme to defraud Allstate by submitting, causing to be submitted, or knowing that non-compensable claims for payment under the Michigan No-Fault Act would be submitted to Allstate.

656.   The Count XIII defendants' misrepresentations were known to be false and were made for the purpose of inducing Allstate to make payments for claims that are not compensable under Michigan law.

657.   Allstate reasonably relied upon such material misrepresentations to its detriment in paying numerous non-meritorious bills for alleged medical expenses pursuant to No-Fault insurance claims and in incurring expenses related to the adjustment and processing of claims submitted by the defendants.

658.   As a direct and proximate result of the defendants' fraudulent representations and acts, Allstate has been damaged in its business and property as previously described herein.

**COUNT XIV**
**CIVIL CONSPIRACY**
**Against All Defendants**

659.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 467 set forth above as if fully set forth herein.

660.   Defendants Applied Rehab, Elite Chiropractic, Core Health, Straightway, Huraibi Pain & Rehab Institute, HS Management, Kallil Kazan, Khanafer, Salameh, Mo Kazan, and Huraibi ("Count XIV defendants") combined and concerted to accomplish the unlawful purpose of defrauding Allstate by submitting claims for payment under the No-Fault Act to which they were not entitled because (1) the defendants did not actually render the treatment for which

claims were submitted, (2) the defendants did not provide reasonably necessary medical treatment, (3) the defendants did not lawfully render treatment, and (4) the defendants did not submit reasonable charges to Allstate.

661.   The Count XIV defendants worked together to achieve an unlawful purpose (namely, defrauding Allstate for personal gain).

662.   This purpose was known to all of the Count XIV defendants and intentionally pursued.

663.   Despite knowing that the defendants were not entitled to payment under the No-Fault Act because they billed for services that were not actually provided, because they billed for services that were not reasonably necessary, because treatment was not lawfully rendered, and because they charged outrageous and unreasonable prices, the Count XIV defendants nonetheless submitted, caused to be submitted, or knew that claims would be submitted (with accompanying false medical documentation) to Allstate seeking payment to the defendants.

664.   In reasonable reliance on the false medical documentation submitted by the defendants, Allstate paid certain of the claims submitted.

665.   All of the Count XIV defendants directly benefited from the payments made to Applied Rehab, Elite Chiropractic, Core Health, Straightway, Huraibi Pain & Rehab Institute, and HS Management.

666.   All of the Count XIV defendants actively and intentionally partook in a scheme to defraud Allstate and also encouraged and aided other Count XIV defendants in the commission of acts done for the benefit of all Count XIV defendants and to the unjustified detriment of Allstate.

667.   Accordingly, all of the Count XIV defendants are equally liable for the fraud perpetrated on Allstate pursuant to their conspiracy.

**COUNT XV**
**PAYMENT UNDER MISTAKE OF FACT**
**Against Applied Rehab & Physical Therapy LLC d/b/a Applied Rehab, Elite Chiropractic Center, P.C., Core Health PLLC, Straightway Transportation LLC, Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute, and HS Management LLC**

668.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 467 set forth above as if fully set forth herein.

669.   Allstate paid the amounts described herein and itemized in Exhibits 8 through 13 under a misunderstanding, misapprehension, error, fault, or ignorance of material facts, namely, the scheme to defraud Allstate by misrepresenting the fact, lawfulness, and necessity of services purportedly provided and billed by Applied Rehab, Elite Chiropractic, Core Health, Straightway, Huraibi Pain & Rehab Institute, and HS Management ("Count XV defendants").

670.   Allstate sustained damages by paying under a mistake of fact the claims submitted by the Count XV defendants, which misrepresented the fact,

reasonableness, necessity, and lawfulness of the medical services allegedly rendered and whether the patient's injury arose out of a motor vehicle accident.

671.    The Count XV defendants, individually and jointly, would be unjustly enriched if permitted to retain the payments made to them by Allstate under a mistake of fact.

672.    Allstate is entitled to restitution from each of the Count XV defendants, individually and jointly, for all monies paid to and/or received by them from Allstate.

**COUNT XVI**
**UNJUST ENRICHMENT**
**Against All Defendants**

673.    Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 467 set forth above as if fully set forth herein.

674.    Allstate paid monies, including those amounts set out in Exhibits 8 through 13, in response to the claims submitted, or caused to be submitted, by defendants Applied Rehab, Elite Chiropractic, Core Health, Straightway, Huraibi Pain & Rehab Institute, HS Management, Kallil Kazan, Khanafer, Salameh, Mo Kazan, and Huraibi ("Count XVI defendants") in reasonable belief that it was legally obligated to make such payments based upon the defendants' fraudulent misrepresentations.

675.    Allstate's payments constitute a benefit which the Count XVI defendants aggressively sought and voluntarily accepted.

676.   The Count XVI defendants wrongfully obtained payments from Allstate through the fraudulent scheme detailed herein.

677.   The Count XVI defendants have been unjustly enriched by receipt of these wrongfully obtained payments from Allstate.

678.   The Count XVI defendants' retention of these payments would violate fundamental principles of justice, equity, and good conscience.

## COUNT XVII
### DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201
### Against All Defendants

679.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 467 set forth above as if fully set forth herein.

680.   Defendants Applied Rehab, Elite Chiropractic, Core Health, Straightway, Huraibi Pain & Rehab Institute, HS Management, Kallil Kazan, Khanafer, Salameh, Mo Kazan, and Huraibi ("Count XVII defendants") routinely billed for unnecessary and unlawful services with respect to the patients at issue in this Complaint.

681.   The Count XVII defendants also billed for services pursuant to a fraudulent scheme whereby patients were illegally solicited and referred to them for the purpose of generating claims to Allstate, and not for the purpose of providing reasonably necessary medical treatment, testing, or services.

682. Pursuant to the Michigan No-Fault Act, an insurer is liable to pay benefits only for reasonable and necessary expenses for lawfully rendered treatment arising out of a motor vehicle accident. Mich. Comp. Laws §§ 500.3105 and 500.3107.

683. The lack of reasonableness and necessity are defenses to an insurer's obligation to pay No-Fault benefits arising out of a motor vehicle accident. Mich. Comp. Laws § 500.3107.

684. The lack of lawfully-rendered treatment (such as treatment arising from illegal patient solicitation and unlicensed treatment) is also a defense to an insurer's obligation to pay No-Fault benefits.

685. Where a provider is unable to show that an expense has been incurred for a reasonably necessary product or service arising out of a motor vehicle accident, there can be no finding of a breach of the insurer's duty to pay, and thus no finding of liability with regard to that expense.

686. Further, providers may only charge a reasonable amount for the products, services, and accommodations rendered. Mich. Comp. Laws § 500.3157(1).

687. The Count XVII defendants continue to submit claims under the No-Fault Act for unnecessary and unlawfully rendered medical services to Allstate, and other claims remain pending with Allstate.

688.   The Count XVII defendants will continue to bill Allstate for No-Fault benefit payments absent a declaration by this Court that Allstate has no obligation to pay fraudulent pending and previously-denied No-Fault claims submitted by any of the Count XVII defendants for any or all of the reasons set out in the within Complaint.

689.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count XVII defendants billed for unnecessary and unlawful treatment that is not compensable under Michigan's No-Fault Act.

690.   Allstate also requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count XVII defendants were engaged in a fraudulent scheme whereby they billed for unnecessary and unlawful treatment and submitted unreasonable charges for the same to Allstate at all relevant times.

691.   As such, the Count XVII defendants have no standing to submit, pursue, or receive No-Fault benefits or any other payment from Allstate, and Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count XVII defendants cannot seek payment from Allstate for benefits under Michigan's No-Fault Act, Mich. Comp. Laws § 500.3101, *et seq.*, any policy of insurance, any assignment of benefits, any lien of any nature, or any other claim for payment related to the conduct detailed in the within Complaint.

692.   Allstate further requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count XVII defendants cannot balance bill or otherwise seek payment from any person insured under an Allstate policy or for whom Allstate is the responsible payor related to the fraudulent conduct detailed in the within Complaint.

## XV.   **DEMAND FOR RELIEF**

WHEREFORE, plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Property and Casualty Insurance Company, Esurance Insurance Company, and Esurance Property and Casualty Insurance Company respectfully pray that judgment enter in their favor as follows:

**COUNT I**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**(Applied Rehab Enterprise)**
**Against Elite Chiropractic Center, P.C., Straightway Transportation LLC, Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute, HS Management LLC, Kallil Kazan, D.C., Naim Khanafer, D.C., Naiel Salameh, D.C., Mohamad Kazan, and Hussein Huraibi, M.D.**

(a)   AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)   AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)   GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT II
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### (Applied Rehab Enterprise)
**Against Elite Chiropractic Center, P.C., Straightway Transportation LLC, Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute, HS Management LLC, Kallil Kazan, D.C., Naim Khanafer, D.C., Naiel Salameh, D.C., Mohamad Kazan, and Hussein Huraibi, M.D.**

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT III
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### (Elite Chiropractic Enterprise)
**Against Applied Rehab & Physical Therapy LLC d/b/a Applied Rehab, Straightway Transportation LLC, Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute, HS Management LLC, Kallil Kazan, D.C., Naim Khanafer, D.C., Naiel Salameh, D.C., Mohamad Kazan, and Hussein Huraibi, M.D.**

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT IV
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### (Elite Chiropractic Enterprise)
**Against Applied Rehab & Physical Therapy LLC d/b/a Applied Rehab, Straightway Transportation LLC, Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute, HS Management LLC, Kallil Kazan, D.C., Naim Khanafer, D.C., Naiel Salameh, D.C., Mohamad Kazan, and Hussein Huraibi, M.D.**

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT V
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### (Core Health Enterprise)
**Against Straightway Transportation LLC, Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute, HS Management LLC, Kallil Kazan, D.C., Naim Khanafer, D.C., Naiel Salameh, D.C., Mohamad Kazan, and Hussein Huraibi, M.D.**

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## <u>COUNT VI</u>
## VIOLATIONS OF 18 U.S.C. § 1962(d)
### (Core Health Enterprise)
**Against Straightway Transportation LLC, Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute, HS Management LLC, Kallil Kazan, D.C., Naim Khanafer, D.C., Naiel Salameh, D.C., Mohamad Kazan, and Hussein Huraibi, M.D.**

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT VII
### VIOLATIONS OF 18 U.S.C. § 1962(c)
#### (Straightway Transportation Enterprise)
**Against Applied Rehab & Physical Therapy LLC d/b/a Applied Rehab, Core Health PLLC, Elite Chiropractic Center, P.C., Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute, HS Management LLC, Kallil Kazan, D.C., Naim Khanafer, D.C., Naiel Salameh, D.C., Mohamad Kazan, and Hussein Huraibi, M.D.**

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT VIII
### VIOLATIONS OF 18 U.S.C. § 1962(d)
#### (Straightway Transportation Enterprise)
**Against Applied Rehab & Physical Therapy LLC d/b/a Applied Rehab, Core Health PLLC, Elite Chiropractic Center, P.C., Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute, HS Management LLC, Kallil Kazan, D.C., Naim Khanafer, D.C., Naiel Salameh, D.C., Mohamad Kazan, and Hussein Huraibi, M.D.**

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT IX
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### (Huraibi Pain & Rehab Institute Enterprise)
### Against Applied Rehab & Physical Therapy LLC d/b/a Applied Rehab, Core Health PLLC, Elite Chiropractic Center, P.C., Straightway Transportation LLC, HS Management LLC, Kallil Kazan, D.C., Naim Khanafer, D.C., Naiel Salameh, D.C., Mohamad Kazan, and Hussein Huraibi, M.D.

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT X
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### (Huraibi Pain & Rehab Institute Enterprise)
### Against Applied Rehab & Physical Therapy LLC d/b/a Applied Rehab, Core Health PLLC, Elite Chiropractic Center, P.C., Straightway Transportation LLC, HS Management LLC, Kallil Kazan, D.C., Naim Khanafer, D.C., Naiel Salameh, D.C., Mohamad Kazan, and Hussein Huraibi, M.D.

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)    AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)    GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)    GRANT all other relief this Court deems just.

**COUNT XI**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**(HS Management Enterprise)**
**Against Applied Rehab & Physical Therapy LLC d/b/a Applied Rehab, Core Health PLLC, Elite Chiropractic Center, P.C., Straightway Transportation LLC, Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute, Kallil Kazan, D.C., Naim Khanafer, D.C., Naiel Salameh, D.C., Mohamad Kazan, and Hussein Huraibi, M.D.**

(a)    AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)    AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)    GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT XII
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### (HS Management Enterprise)
**Against Applied Rehab & Physical Therapy LLC d/b/a Applied Rehab, Core Health PLLC, Elite Chiropractic Center, P.C., Straightway Transportation LLC, Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute, Kallil Kazan, D.C., Naim Khanafer, D.C., Naiel Salameh, D.C., Mohamad Kazan, and Hussein Huraibi, M.D.**

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XIII
### COMMON LAW FRAUD
### Against All Defendants

(a)     AWARD Allstate its actual and consequential damages against the defendants jointly and severally in an amount to be determined at trial;

(b)     AWARD Allstate its costs, including, but not limited to, investigative costs incurred in the detection of the defendants' illegal conduct; and

(c)     GRANT all other relief this Court deems just.

## COUNT XIV
**CIVIL CONSPIRACY**
**Against All Defendants**

(a)     AWARD Allstate its actual and consequential damages against the

defendants jointly and severally in an amount to be determined at trial;

(b)     AWARD Allstate its costs, including, but not limited to, investigative

costs incurred in the detection of the defendants' illegal conduct; and

(c)     GRANT all other relief this Court deems just.

## COUNT XV
**PAYMENT UNDER MISTAKE OF FACT**
**Against Applied Rehab & Physical Therapy LLC d/b/a Applied Rehab, Elite
Chiropractic Center, P.C., Core Health PLLC, Straightway Transportation
LLC, Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute,
and HS Management LLC**

(a)     AWARD Allstate its actual and consequential damages in an amount

to be determined at trial; and

(b)     GRANT all other relief this Court deems just.

## COUNT XVI
**UNJUST ENRICHMENT**
**Against All Defendants**

(a)     AWARD Allstate its actual and consequential damages in an amount

to be determined at trial; and

(b)     GRANT all other relief this Court deems just.

## COUNT XVII
## DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201
## Against All Defendants

(a)     DECLARE that Allstate has no obligation to pay pending and previously denied No-Fault insurance claims submitted by Applied Rehab & Physical Therapy LLC d/b/a Applied Rehab, Elite Chiropractic Center, P.C., Core Health PLLC, Straightway Transportation LLC, Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute, HS Management LLC, Kallil Kazan, D.C., Naim Khanafer, D.C., Naiel Salameh, D.C., Mohamad Kazan, and Hussein Huraibi, M.D.  for any or all of the reasons set out in the within Complaint;

(b)     DECLARE that Applied Rehab & Physical Therapy LLC d/b/a Applied Rehab, Elite Chiropractic Center, P.C., Core Health PLLC, Straightway Transportation LLC, Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute, HS Management LLC, Kallil Kazan, D.C., Naim Khanafer, D.C., Naiel Salameh, D.C., Mohamad Kazan, and Hussein Huraibi, M.D., jointly and severally, cannot seek payment from Allstate for benefits under Michigan's No-Fault Act, Mich. Comp. Laws § 500.3101, *et seq*., any policy of insurance, any assignment of benefits, any lien of any nature, or any other claim for payment related to the fraudulent conduct detailed in the within Complaint;

(c)     DECLARE that Applied Rehab & Physical Therapy LLC d/b/a Applied Rehab, Elite Chiropractic Center, P.C., Core Health PLLC, Straightway

Transportation LLC, Hussein A. Huraibi, MD, PLLC d/b/a Huraibi Pain & Rehab Institute, HS Management LLC, Kallil Kazan, D.C., Naim Khanafer, D.C., Naiel Salameh, D.C., Mohamad Kazan, and Hussein Huraibi, M.D., jointly and severally, cannot balance bill or otherwise seek payment from any person insured under an Allstate policy or for whom Allstate is the responsible payor related to the conduct detailed in the within Complaint; and

    (d)    GRANT such other relief as this Court deems just and appropriate under Michigan law and the principles of equity.

## XVI. **DEMAND FOR JURY TRIAL**

The plaintiffs hereby demand a trial by jury on all claims.

[SIGNATURE PAGE FOLLOWS]

Respectfully submitted,

SMITH & BRINK

*/s/ Jacquelyn A. McEttrick*
_____
Richard D. King, Jr.
rking@smithbrink.com
Nathan A. Tilden (P76969)
ntilden@smithbrink.com
Jacquelyn A. McEttrick
jmcettrick@smithbrink.com
John D. Tertan
jtertan@smithbrink.com
38777 Six Mile Road, Suite 314
Livonia, MI 48152
(734) 521-9000

350 Granite Street, Suite 2204
Braintree, MA 02184
(617) 770-2214

*Attorneys for Plaintiffs*
*Allstate Insurance Company, Allstate*
*Property and Casualty Insurance*
*Company, Allstate Fire and Casualty*
*Insurance Company, Esurance*
*Insurance Company, and Esurance*
*Property and Casualty Insurance*
*Company*

Dated:  September 3, 2020